TAX COMMISSIONER *vs.* ELIOT T. PUTNAM.

SAME *vs.* SUSAN E. GARFIELD.

Suffolk.     April 13, 1917. — June 27, 1917.

Present: RUGG, C. J., LORING, BRALEY, DE COURCY, CROSBY, PIERCE, &
CARROLL, JJ.

*Tax,* On income.  *Constitutional Law,* Income tax.  *Words,* "Income," "Accumulated profits," "Distribution of capital."

A tax under St. 1916, c. 269, § 5 (c), § 7, upon the excess of the gains over the losses arising from sales of intangible personal property during the year 1916 is a tax on income and is valid under the Forty-fourth Amendment of the Constitution.

The circumstances under which the Forty-fourth Amendment of the Constitution was adopted, especially the fact that the United States income tax of October 3, 1913, with its broad and inclusive terms as contained in 38 U. S. Sts. at Large, c. 16, which was passed under the Sixteenth Amendment of the Constitution of the United States authorizing a tax on incomes, was in force, require the conclusion that it was the purpose of the people of the Commonwealth to include within the scope of the word "income" everything that by reasonable intendment can be said to be income.

Gains derived from the sale of rights to subscribe to new shares of a corporation issued in the year 1916 to a taxpayer who was a stockholder previous to that year are taxable as income under the provisions of the same statute.

In making the decision stated above it was *said,* that upon the record it was not necessary to decide, whether rights to subscribe for shares of capital stock, when exercised by such a subscription, are taxable as income.

Under the same statute a stock dividend declared and paid after the statute took effect out of profits earned before the statute took effect lawfully is taxable as income of the same class as a cash dividend; and this is so even when the stock dividend was declared out of accumulations of earnings that before 1916 had been invested in permanent additions to the plant of the corporation declaring the dividend.

Under the same statute an extra cash dividend of thirty-three and one third per cent on shares of corporate stock owned by the taxpayer before the year 1916, declared and paid after the statute took effect out of undistributed earnings that accrued before March, 1913, lawfully is taxable as income.

Two PETITIONS, filed respectively on March 12 and March 22, 1917, by the Tax Commissioner, each for a writ of mandamus ordering the respective respondents to file a return of his and her taxable income for the year 1916 as required by law.

Each of the cases came on to be heard by *Loring,* J., upon the petition, the answer and agreed facts.  In each case the single

justice found the facts to be as stated in the agreed facts and at the requests of the parties reported all questions of law for determination by the full court.

The cases were argued together at a special sitting of this court on April 13, 1917, before *Rugg*, C. J., *Loring, Braley, De Courcy,* & *Pierce*, JJ., and afterwards were submitted on briefs to all the justices.

*W. H. Hitchcock*, Assistant Attorney General, for the petitioner.

*R. Walcott*, for the respondent Putnam.

*C. R. Lamson*, for the respondent Garfield.

RUGG, C. J. The Forty-fourth Amendment to the Constitution of this Commonwealth, approved and ratified by the people in November, 1915, is in these words: "Full power and authority are hereby given and granted to the General Court to impose and levy a tax on income in the manner hereinafter provided. Such tax may be at different rates upon income derived from different classes of property, but shall be levied at a uniform rate throughout the Commonwealth upon incomes derived from the same class of property. The General Court may tax income not derived from property at a lower rate than income derived from property, and may grant reasonable exemptions and abatements. Any class of property the income from which is taxed under the provisions of this article may be exempted from the imposition and levying of proportional and reasonable assessments, rates and taxes as at present authorized by the Constitution. This article shall not be construed to limit the power of the General Court to impose and levy reasonable duties and excises." The inquiry raised on this record chiefly concerns the meaning of "income" as that word is used in the grant of power to the General Court to "impose and levy a tax on income."

The Constitution of Massachusetts is a frame of government for a sovereign power. It was designed by its framers and accepted by the people as an enduring instrument, so comprehensive and general in its terms that a free, intelligent and moral body of citizens might govern themselves under its beneficent provisions through radical changes in social, economic and industrial conditions. It declares only fundamental principles as to the form of government and the mode in which it shall be exercised. Certain great powers are conferred and some limita-

tions as to their exercise are established. The original Constitution and all its Amendments together form one instrument. It is to be interpreted in the light of the conditions under which it and its several parts were framed, the ends which it was designed to accomplish, the benefits which it was expected to confer, and the evils which it was hoped to remedy. It is a grant from the sovereign people and not the exercise of a delegated power. It is a statement of general principles and not a specification of details. Amendments to such a charter of government ought to be construed in the same spirit and according to the same rules as the original. It is to be interpreted as the Constitution of a State and not as a statute or an ordinary piece of legislation. Its words must be given a construction adapted to carry into effect its purpose.

The cases at bar raise four main questions:

(1) Are excesses of gains over losses in the purchase and sale of intangible personal property by one not engaged in the business of dealing in such property taxable as income?

(2) Are gains derived from the sale of rights to subscribe for new shares of stock to be issued by an existing corporation taxable as income?

(3) Is a stock dividend, declared and issued by a corporation after the statute went into effect, out of an accumulation of profits earned and invested in its business before the statute was enacted, taxable as income?

(4) Is a cash dividend declared and paid after the statute went into effect out of profits earned before the statute took effect, taxable as income?

1. We proceed to the discussion of the first main question.

Pursuant to the grant of power given by the Forty-fourth Amendment, the income tax law, St. 1916, c. 269, was enacted. It is provided by § 5 that "Income of the following classes received by any inhabitant of this Commonwealth, during the calendar year prior to the assessment of the tax, shall be taxed as follows: . . . (c) The excess of the gains over the losses received by the taxpayer from the purchases or sales of intangible personal property, whether or not the said taxpayer is engaged in the business of dealing in such property, shall be taxed at the rate of three per cent per annum. . . . " The act took effect so

as to include the income of the calendar year 1916. The tax commissioner issued a bulletin to be used in the preparation of income tax returns, giving the "Approved Valuation" of stocks on January 1, 1916. No question has been raised as to the accuracy of this valuation. By the express terms of § 7 of the income tax act the value of the intangible personal property on January 1, 1916, if owned by the taxpayer on that date, and its value on the date acquired in the event of purchase after that date, is made the basis of computation for determining gains and losses.

The defendant Putnam on January 1, 1916, owned certain shares of stock in corporations, which he sold during the calendar year 1916 at sums in excess of the prices given in the "Approved Valuation" bulletin, so that the net profits realized exceeded his total losses. He also bought certain stocks during the year 1916 and sold them during the same year at a profit. It is contended on his behalf that these gains do not constitute "income" within the meaning of that word in the Forty-fourth Amendment.

The Forty-fourth Amendment was adopted by the General Court and by it proposed to the people after prolonged study and at the end of various efforts under the grant of power to tax contained in c. 1, § 1, art. 4 of the Constitution to establish a general and extensive income tax. Numerous resolves of the Legislature have been passed from time to time extending over many years, providing for the investigation of the subject of taxation by special commissions and committees. The reports from these sources were voluminous and most, if not all of them, suggested some form of tax on incomes from investments. Advisory opinions to the General Court or one of its branches by the justices of this court touching particular phases of the matter are to be found in *Opinions of the Justices*, 195 Mass. 607, 208 Mass. 616, 220 Mass. 613. All the schemes thus proposed either were not acceptable to the Legislature or appeared to be in conflict with the grant of the power to tax contained in the Constitution. It became necessary to declare unconstitutional one statute of this general nature. *Perkins* v. *Westwood*, 226 Mass. 268. The adoption and ratification of the Forty-fourth Amendment under these circumstances renders imperative the inference that the word "income" was there used with the purpose of setting at rest any doubt about the full and complete power of the Legislature

to deal with "income" as a subject of taxation. That word was employed to express a comprehensive idea. It is not to be given a narrow or constricted meaning. It must be interpreted as including every item which by any reasonable understanding can fairly be regarded as income. One purpose of the amendment was to avoid with reference to anything rightly describable as "income," the requirement of c. 1, § 1, art. 4 of the Constitution, that property taxes must be "proportional . . . upon all . . . estates lying" within the Commonwealth, and to enable income to be taxed at a rate not "proportional" to all other property and to exempt from other taxation the property from which such income arises.

"Income" like most other words has different meanings dependent upon the connection in which it is used and the result intended to be accomplished. One purpose of its use in the Forty-fourth Amendment doubtless was to distinguish property flowing out of an original investment from that which in its inherent nature is permanent investment, already subject to the ample taxing power of c. 1, §1, art. 4. But that is not its exclusive signification in the amendment. In its ordinary and popular meaning, "income" is the amount of actual wealth which comes to a person during a given period of time. At any single moment a person scarcely can be said to have income. The word in most, if not all, connections involves time as an essential element in its measurement or definition. It thus is differentiated from capital or investment, which commonly means the amount of wealth which a person has on a fixed date. Income may be derived from capital invested or in use, from labor, from the exercise of skill, ingenuity or sound judgment, or from a combination of any or all of these factors. One of the most recent of its definitions is "the gain derived from capital, from labor, or from both combined." *Stratton's Independence, Ltd.* v. *Howbert*, 231 U. S. 399, 415. Doubtless it would be difficult to give a comprehensive definition which can be treated as universal and final. It is common speech for one to say that he made so much money during a particular twelve months and to mean thereby that he has increased his wealth to that amount. Such a remark made by one not engaged permanently or intermittently in business or any gainful occupation naturally means that by casual purchases or sales of property made in the exercise of good judgment he has augmented the

total value of his property.  The decisive word in the Forty-fourth Amendment is "income."  That is a word which not only had been much discussed by legislators and in the press in connection with taxation, but which also is in everyday use.  The common meanings attached to it by lexicographers, therefore, have weight in determining what the people may be supposed to have thought its signification to have been when voting for the amendment. It is defined as that "gain . . . which proceeds from labor, business, or property; commercial revenue or receipts of any kind, including wages or salaries, the proceeds of agriculture or commerce, the rent of houses, or the return on investments," and also as "The amount of money coming to a person or corporation within a specified time . . . whether as payment for services, interest, or profit from investment."  Its usual synonyms are gain, profit, revenue.  It is used in this sense also by writers upon taxation and economics.

The gains and profits made as a result of carrying on a business of buying and selling goods had been held to be taxable as income under the tax law long before the adoption of the Forty-fourth Amendment.  *Wilcox v. County Commissioners*, 103 Mass. 544. It there was recognized that such income might accrue in part from goods purchased before the period of time for which the income was to be reckoned.  Gain made in the conduct of a business which consists of making purchases and sales generally is recognized as income.  Of course, one engaged in the business of buying and selling intangible personal property was equally subject to taxation on gains derived therefrom under the law as it was before 1916.  Such incomes had been taxed for many years immediately before the adoption of the amendment.  It hardly can be thought that the people, in conferring the power to tax incomes, intended to perpetuate for all time a distinction between incomes derived from a business of buying and selling property, on the one side, and the profits realized by one not engaged in such business but occasionally and casually and not as a business making purchases and sales of the same kind of property, on the other side, and to grant to their representatives authority to tax the one and to deny them authority to tax the other.  In some connections profits of this kind have been held to be income.  *Park's estate*, 173 Penn. St. 190.

The federal income tax law of 1913 may be presumed to have been more or less familiar to the members of the General Court and the people during the discussion accompanying the adoption of the Forty-fourth Amendment. The phrase of that law, c. 16, § 2B of the Acts of Congress, approved October 3, 1913, (38 U. S. Sts. at Large, 167,) is significantly broad and inclusive: "The net income of a taxable person shall include gains, profits, and income derived from . . . dealings in property, whether real or personal, growing out of the ownership or use of or interest in real 'or personal property . . . or gains or profits and income derived from any source whatever." The mind of the ordinary legislator and voter would naturally infer from these words that gains like those here in question would be subject to the federal income tax. That act was passed under the Sixteenth Amendment to the United States Constitution which authorized a tax only on "incomes." It is matter of common knowledge that under the federal income tax act an income tax was levied upon gains derived from purchases and sales similar to those here in question, and that the right to do so was asserted by the revenue officers of the United States. Presumably this was known by the members of the Legislatures of 1914 and 1915, by which the Forty-fourth Amendment was agreed to, and by the people who approved and ratified it. It is not pertinent to inquire here whether that interpretation of the United States income tax ultimately will be sustained. See *Gray* v. *Darlington,* 15 Wall. 63; *Gauley Mountain Coal Co.* v. *Hays,* 144 C. C. A. 408; *Lynch* v. *Turrish,* 236 Fed. Rep. 653, and cases cited at page 660. Compare *Stanton* v. *Baltic Mining Co.* 240 U. S. 103; *Von Baumbach* v. *Sargent Land Co.* 242 U. S. 503, 525; *Brushaber* v. *Union Pacific Railroad,* 240 U. S. 1. The relevant fact is that the right to levy such a tax on gains of this kind as an income tax was asserted by the federal authorities and generally acquiesced in by the taxpayer as bearing upon what scope shall be given to the word "income" contemporaneously used in the Forty-fourth Amendment.

If the word "incomes" or the words "gain, profit and income" had been used, it hardly would be contended that the intendment of the amendment was not comprehensive. But in the framing of constitutions words naturally are employed in a compendious sense as expressive of general ideas rather than of the

fine shades of close distinctions. The simple and dignified diction of our Constitution does not readily lend itself to technical and narrow definition. Terse statement of governmental principles in plain language, and not amplification in the delicate niceties of words, characterizes its composition.

The fair and almost irresistible conclusion from all these considerations is that the word "income" in the Forty-fourth Amendment has a generic meaning and includes gains, profits and revenues.

The gains received from sales of stocks come within the definitions of "income" heretofore stated. They are derived from the application of sagacity to the use of capital in making purchases and resales at an advance. The transactions could not be carried out except by the use of capital and the profit is derived directly from the capital in combination with skill in selecting the time for purchase and for sale.

It is true that in some other connections profits and gains arising from the increase in value of investments and realized by sale are treated as a part of the principal and not as income. That is so of trust estates. But, as has been pointed out, it is not true where business is conducted which consists of making sales and purchases. *Williams* v. *Milton*, 215 Mass. 1, 11. *Wilcox* v. *County Commissioners*, 103 Mass. 544.

A very different question would arise if the attempt were made to tax as income the increase in value of the capital investment in intangibles which had accrued to the owner from a date of purchase long anterior to the enactment of the tax act. Such a construction of a statute would not be adopted except as the imperative result of unequivocal words, and even then serious questions might arise as to the validity of such an act. See *Gray* v. *Darlington*, 15 Wall. 63; *Bailey* v. *Railroad Co.* 106 U. S. 109, 114; *McCoach* v. *Minehill & Schuylkill Haven Railroad*, 228 U. S. 295, 300. That would be an attempt to tax as income an increment in value of the capital investment which had occurred and been realized in possession previous to the taking effect of the tax law. It might be regarded as an effort to convert into income that which already had become capital. See *Mitchell Brothers* v. *Doyle*, 225 Fed. Rep. 437. That is not the situation in the case at bar. The income tax act according to the express pro-

visions of § 7 and as interpreted by the commissioner in its application to these defendants, is to be levied only on such increases in values as have been realized by sales within the year, using as the basis of value in instances where stock was owned by the taxpayer on January 1, 1916, the fair cash value at that time. Thus the income as ascertained for tax purposes is the annual income in its strict sense. It is a direct apportionment of the increment from this source to the year in which it was received and converted into cash. See *Doyle* v. *Mitchell Brothers*, 235 Fed. Rep. 686; 149 C. C. A. 106; *Biwabik Mining Co.* v. *United States*, 242 Fed. Rep. 9, and *Cleveland, Cincinnati, Chicago & St. Louis Railway* v. *United States*, 242 Fed. Rep. 18, each decided by the Circuit Court of Appeals for the Sixth Circuit on May 8, 1917. Therefore no question either of statute interpretation or constitutionality is raised in the cases at bar as to an attempt to tax gains on the value of property which have not been realized by sale and which would be known in common speech as mere paper profits, and nothing to that point is here decided.

The argument against the validity of the tax, as likely to cause confusion in keeping accounts of trustees and others and in making divisions and apportionments, is based merely on convenience and cannot be regarded as of much weight. Illustrations were put in argument and readily can be imagined of instances where hardship may be wrought by this decision. But that is likely to be true of every general rule of law and particularly of tax statutes.

These reasons lead to the conclusion that the tax upon gains in excess of losses arising from sales of stock during the year 1916 is a tax upon income and not upon principal.

In reaching this conclusion we are not unmindful of decisions of other jurisdictions more or less apparently at variance. See for example, *Gray* v. *Darlington*, 15 Wall. 63; *Hudson Bay Co.* v. *Stevens*, 25 T. L. R. 709; *Tebrau (Johore) Rubber Syndicate, Ltd.* v. *Farmer*, 47 Sc. L. Rep. 816; *Lynch* v. *Turrish*, 236 Fed. Rep. 653; 149 C. C. A. 649, and cases there collected; *Lynch* v. *Hornby*, 236 Fed. Rep. 661; 149 C. C. A. 657. But the grounds upon which this judgment rests are such as to render unnecessary a critical examination of those decisions. They relate to other statutes enacted under constitutional provisions different from those of the Forty-fourth Amendment.

The word "income" is susceptible of a meaning sufficiently broad to include gain of the kind and from the sources here in question. The circumstances under which the Forty-fourth Amendment was adopted are of persuasive force in requiring the conclusion that it was the purpose of the people to include within its scope everything that by reasonable intendment can be said to be income.

The income tax act does not violate the provisions of the Forty-fourth Amendment so far as concerns this item of income. It does not levy a tax at a different rate upon incomes derived from the same class of property. The rate levied upon gains from the sales of intangible personal property is three per cent, § 5 (c), while that upon the dividends from stock and interest on bonds and notes is six per cent, § 2. But these two sources of income do not belong to the same class. When a classification is made of property for purposes of taxation, the question is, as was said in *Nicol* v. *Ames*, 173 U. S. 509, 521, "whether there is any reasonable ground for it, or whether it is only and simply arbitrary, based upon no real distinction and entirely unnatural." A classification will not be declared void as unreasonable "unless it was plainly and grossly oppressive and unequal, or contrary to common right." *Oliver* v. *Washington Mills*, 11 Allen, 268, 279. The tax upon interest and dividends is levied upon a return which comes to the owner of the principal security without further effort on his part. The tax upon excess of gains over losses in the purchases and sales of intangible personal property is levied, not upon income derived from a specific property but from the net result of the combination of several factors, including the capital investment and the exercise of good judgment and some measure of business sagacity in making purchases and sales. Gain derived in this way, to express it in "summary and comprehensive form," "is the creation of capital, industry, and skill." *Wilcox* v. *County Commissioners*, 103 Mass. 544. It is not the production of capital alone and does not arise solely from a simple investment.

The question was somewhat argued at the bar whether the tax authorized by the Forty-fourth Amendment and levied by the instant statute is wholly a property tax, as was said in *Opinion of the Justices*, 220 Mass. 613, 623, 625, *Perkins* v. *Westwood,*

226 Mass. 268, *Pollock* v. *Farmers' Loan & Trust Co.* 157 U. S. 429, 581; *S. C.* 158 U. S. 601, or whether in some aspects and applications it may be an excise, *Springer* v. *United States,* 102 U. S. 586, 602, *Brushaber* v. *Union Pacific Railroad,* 240 U. S. 1, 16, 17, *Flint* v. *Stone Tracy Co.* 220 U. S. 107, 150, 152, *Glasgow* v. *Rowse,* 43 Mo. 479, 491, *Waring* v. *Mayor & Aldermen of Savannah,* 60 Ga. 93, 100, *Drexel & Co.* v. *Commonwealth,* 46 Penn. St. 31, 40. It is not necessary to do more than to refer to 220 Mass. 623–627, for it is plain that the Forty-fourth Amendment modified the provisions of c. 1, § 1, art. 4 of the Constitution, to the effect that property taxes must be proportional, so that the Legislature now has power to levy taxes upon whatever rightly may be held to be "income" at different rates upon income derived from different classes of property, provided there is uniformity in rate upon incomes from the same classes of property. It follows that in this connection the rule stated in *Gleason* v. *McKay,* 134 Mass. 419, and *O'Keeffe* v. *Somerville,* 190 Mass. 110, to the effect that no valid excise can be imposed upon the exercise of a natural right, has no relevancy.

2. The second question is whether gains derived from the sale of rights to subscribe for new shares of stock to be issued by a corporation are taxable as income.

The respondent Putnam received during 1916 proceeds from the sale of rights, declared in that year, to subscribe to shares of new stock in corporations in which he was a stockholder previous to 1916.

The same reasons which already have been stated, as to the right to treat gains in excess of losses from purchases and sales of intangible personal property as subject to an income tax, lead to the conclusion that gains arising from the sale of rights to subscribe for new stock issued by corporations may also be treated as income by the General Court for purposes of taxation under the Forty-fourth Amendment. Such rights are themselves a species of intangible property. They come to the stockholder as a gratuity. They are a new thing of value which he did not possess before. The amount for which he sells them is a gain.

In the management of trusts as between a life tenant and remainderman rights to subscribe for stock, *Atkins* v. *Albree,* 12 Allen, 359, 361, *Davis* v. *Jackson,* 152 Mass. 58, 61, and stock

dividends, *D'Ooge* v. *Leeds,* 176 Mass. 558, 560, *Rand* v. *Hubbell,*
115 Mass. 461, are regarded as capital and not as income in this
Commonwealth. The rule of this Commonwealth, to the effect
that as between life tenant and remainderman stock dividends
are treated as capital and not as income, perhaps may have
grown up in part at least by reason of its convenience and it
appears to be widely adopted. *Gibbons* v. *Mahon,* 136 U. S. 549.

But, however that may be, it is manifest that there is no in-
herent, necessary and immutable reason why stock dividends
should always be treated as capital. This is apparent because in
several ·jurisdictions they are treated either in whole or in part
as income and not as capital. *Matter of Osborne,* 209 N. Y. 450.
(See *McLouth* v. *Hunt,* 154 N. Y. 179; *Robertson* v. *de Brulatour,*
188 N. Y. 301; *Lowry* v. *Farmers' Loan & Trust Co.* 172 N. Y.
137.) *Pratt* v. *Douglas,* 11 Stew. 516, 541. *Earp's Appeal,* 28
Penn. St. 368. *Holbrook* v. *Holbrook,* 74 N. H. 201, 203, 204.
*Pritchitt* v. *Nashville Trust Co.* 96 Tenn. 472. *Hite* v. *Hite,* 93 Ky.
257. *Thomas* v. *Gregg,* 78 Md. 545. *Goodwin* v. *McGaughey*
108 Minn. 248. *Soehnlein* v. *Soehnlein,* 146 Wis. 330, 339. The
same is true of our rule (which prevails also at least in the federal
and English courts, see *Gibbons* v. *Mahon,* 136 U. S. 549, 567;
*Bouch* v. *Sproule,* 12 App. Cas. 385) to the effect that rights
to subscribe for new stock which have a market value are to be
attributed to principal and not to income. Some other States
hold the value of such rights to be income and not principal.
*Wiltbank's appeal,* 64 Penn. St. 256. See *Lord* v. *Brooks,* 52
N. H. 72.

It seems impossible to say, when a kind of gain is in many
States held even as between life tenant and remainderman to be
income and not capital, that the word "income," used in an
amendment to the Constitution adopted for the express purpose
of enabling a tax to be levied broadly on all that rightly may be
described as income, should be construed as excluding such gains
simply because this court has held that it was not income in a
single branch of law while numerous other courts have held the
contrary even upon that point. However strong such an argu-
ment might be when urged as to the interpretation of a statute,
it is not of prevailing force as to the broad considerations involved
in the interpretation of an amendment to the Constitution

adopted under the conditions preceding and attendant upon the ratification of the Forty-fourth Amendment.

The rights to subscribe for stock, when sold and converted into cash, rightly may be treated as taxable as a gain on the sale of intangibles under § 5 (c) of the income tax act. These rights commonly are represented by certificates and pass by indorsement. They are a species of intangible property. They are not regarded ordinarily as a profit from the prosecution of the business, but are an inherent and constituent part of the shares. *Atkins* v. *Albree*, 12 Allen, 359, 361. *Hyde* v. *Holmes*, 198 Mass. 287, 293. Their sale resulted from an exercise of judgment to that effect on the part of the stockholder. They are indistinguishable in principle from a sale of the stock itself, and gains derived from sales of such rights fall within the same class of income. The statute in this regard is not in conflict with the amendment.

The question whether rights to subscribe for stock, which are exercised by subscription, are taxable as income is not raised on this record and is not decided.

3. The third question is whether a stock dividend, declared and paid after the statute went into effect out of profits earned before it took effect, is taxable as income. The respondent Garfield received during 1916 a stock dividend declared in that year on shares of stock in corporations owned by her before that time.

The stock dividends in the Garfield case were declared out of an accumulation of earnings which before 1916 had been invested in permanent additions to the plants of the corporations involved. It is urged that these earnings, therefore, had become a part of capital before 1916 and hence cannot in the nature of things be taxed as income. It is true that, in instances of this sort arising between life tenant and remainderman, the fact that the surplus of a corporation has been used in permanent increases of the property devoted to the business of the corporation is oftentimes of significance. *Minot* v. *Paine*, 99 Mass. 101, 111. *Hemenway* v. *Hemenway*, 181 Mass. 406, 410. But upon this point the inquiry is as to the intention of the Legislature as manifested by the words it has used. Those pertinent in this connection are in § 2 (b), where are subjected to the tax "Dividends on shares in all corporations and joint stock companies . . . [with

exceptions not here material] . . . . No distribution of capital, whether in liquidation or otherwise, shall be taxable as income under this section; but accumulated profits shall not be regarded as capital under this provision." That which originally had been earnings in the case at bar had never been distributed as a cash dividend or in any other form. Its use had been such as to add to the value of the capital. It doubtless had increased that value prior to 1916. But the act of the corporation in 1916 was in substance a distribution of certificates of title to represent this increment of value with all the advantages that might flow therefrom. It was the issuance to the stockholder of a new thing of value, transferable, transmissible and salable separate and apart from that which before he had possessed. "Accumulated profits" as used in the statute are words of sufficiently comprehensive scope to include profits which had been earned and invested as had those here in question. The words "accumulated profits" are used as the antithesis of "distribution of capital." The latter would include payment of a part of the capital investment sold and returned to the shareholders, whereby the capacity of the corporation to carry on business was impaired or depleted. See, for example, *Lynch* v. *Hornby*, 236 Fed. Rep. 661; 149 C. C. A. 657. Other illustrations might be put. But the words "distribution of capital " do not readily lend themselves to an issue of new stock, which in its last analysis represents surplus earnings of the corporation for the time being applied to increase of plant and which are intended to be continued to that use. In essence the thing which has been done is to distribute a symbol representing an accumulation of profits, which instead of being paid out in cash is invested in the business, thus augmenting its durable assets. In this aspect of the case the substance of the transaction is no different from what it would be if a cash dividend had been declared with the privilege of subscription to an equivalent amount of new shares. The stock dividend was declared strictly out of an accumulation of earnings applied to business uses and not out of increased market value of capital investment. See *Thayer* v. *Burr*, 201 N. Y. 155. That which the stockholder had before was a fractional interest in the property of the corporation. So far as concerned the accumulation of profits, there was a possibility that they might be paid out in whole or in

part as a cash dividend by authority of the corporation. By the issue of the stock dividend that possibility is gone and the stockholder now has evidence of a permanent interest in the corporate enterprise of which he cannot be deprived. It is a thing different in kind from the thing which the stockholder owned before. From the viewpoint of the stockholder, he has received in the form of dividend in stock a thing with which theretofore he could have no tangible dealings. The certificate for the new shares of stock representing the stock dividend may have a materially greater value than the less tactile right to a share in the accumulated profits which he had before. The fact that the surplus had been accumulated before the income tax law went into effect is not of consequence in this particular. The thing of value which is taxed as income, namely the dividend in stock, did not come into his possession or right to possession until the year for which he is taxed. It is this thing of value which is taxable at the time when it comes into his right to possession. *Edwards* v. *Keith,* 145 C. C. A. 298. *Van Dyke* v. *Milwaukee,* 159 Wis. 460.

The contention that stock dividends are not taxable as income, because in this Commonwealth they are treated as capital and not as income as between life tenant and remainderman, has been disposed of by what has been said already in discussing the second question here raised respecting the taxability as income of rights to subscribe for new shares of stock.

The stock dividends, so far as regards the source from which they come to the stockholder and the impassive nature of his receipt of them, are derived from the same class of property from which are derived ordinary dividends and rightly may be classified with them under § 2 of the income tax act. The two should be taxed, as they are in the statute, at the same rate.

So far as there may be anything at variance with this conclusion in *Lynch* v. *Turrish,* 236 Fed. Rep. 653; 149 C. C. A. 649, we are constrained not to follow it. See in this connection *Southern Pacific Co.* v. *Lowe,* 238 Fed. Rep. 847.

Therefore, in this particular the income tax act is not in conflict with the requirements of the Forty-fourth Amendment as to uniformity of rate on incomes derived from the same class of property.

4. The fourth question is whether a cash dividend declared

and paid after the statute took effect, out of profits earned before it was enacted, is taxable as income.

The respondent Putnam received during 1916 an extra cash dividend of thirty-three and one third per cent on certain shares of corporate stock owned by him before 1916, which was declared out of undistributed earnings accrued before March, 1913.

It is the general and long established rule in this Commonwealth that cash dividends received on corporate stock are to be treated as income and not as capital. *Talbot* v. *Milliken*, 221 Mass. 367. *Gray* v. *Hemenway*, 223 Mass. 293. There is no reason in the circumstances of the case at bar for varying that rule. The present case is well within the scope of these decisions. A stockholder has no individual interest in the profits of a corporation until a dividend has been declared. The accumulation of a surplus does not of itself entitle stockholders to a dividend. *Smith* v. *Hurd*, 12 Met. 371, 385. *New York, Lake Erie, & Western Railroad* v. *Nickals*, 119 U. S. 296. *Humphreys* v. *McKissock*, 140 U. S. 304. *United States Radiator Corp.* v. *New York*, 208 N. Y. 144, 152. The extra cash dividend was declared out of surplus earnings which had accumulated during twenty-three years previous to March 1, 1913. Although it was large and had been accumulating for a long time, it was not the less a cash dividend. It came to the shareholder as his individual property for the first time when it was declared and paid in 1916. It was not in substance or effect a distribution of capital. Moreover, it is expressly provided in § 2 of the income tax law that "No distribution of capital, whether in liquidation or otherwise, shall be taxable as income under this section; but accumulated profits shall not be regarded as capital under this provision." Manifestly it was not intended hereby to change the general rule recognized in numerous cases in addition to those heretofore cited.

The decision upon the first three main questions is by a majority of the court, and is unanimous upon the fourth question. It follows that in each case the entry must be

*Peremptory writ of mandamus to issue.*