HENRY G. LAPHAM *vs.* TAX COMMISSIONER.

Suffolk. November 14, 15, 1922. — February 26, 1923.

Present: RUGG, C.J., DE COURCY, CROSBY, & CARROLL, JJ.

*Tax,* On income. *Corporation,* Dividend. *Ship. Words,* "Accumulated profits," "Distribution of capital."

In 1916 a foreign steamship corporation owned eight steamships of a then fair market value in excess of $10,000,000. Their actual cost was $4,662,535, and all of them had been paid for either by the moneys originally subscribed by the stockholders in payment for their shares of capital stock or out of earnings of the corporation appropriated for that purpose. From year to year the corporation had charged off a five per cent depreciation on all its ships so that in 1916 the book value of the eight ships was $2,986,466. In that year seven of the eight were sold and delivered and one, which was insured, was sunk and the gross proceeds of the sales and the insurance were $11,461,564. The book profit thus realized, $8,475,098, with a large amount of other profit, the corporation distributed in 1917 in a dividend to its stockholders. Thereafter the corporation expected to build or purchase other ships to replace the ships it had parted with, but owing to the unusual conditions which at about or soon after that time began to appear and thereafter prevailed for many months with increasing seriousness, caused by the growth of submarine warfare and later by the entrance of the United States into the World War, it became impossible for the corporation to build, purchase or otherwise acquire steamships for its business, although it endeavored so to do, and the capacity of the corporation to carry on its business was seriously impaired and depleted. Assessments were made under St. 1916, c. 269, § 2, cl. b, and St. 1918, c. 252, upon the amount of dividend paid to and received by a Massachusetts stockholder as above described. Upon complaint for an abatement of the tax, it was *held,* that

(1) Although ships are property of a peculiar nature, they are personal property and an investment by a corporation in them comes within the same general rules as do investments by corporations in other classes of personal property for the purposes of gain;

(2) The deduction of the annual depreciation of five per cent was a fair calculation, based on cost and deterioration, of the lessening of the capital value of the ships from year to year;

(3) The dividend in question was paid exclusively out of profits obtained on the ships and was not paid out of capital assets;

(4) The circumstance that the "capacity of the corporation to carry on its business was seriously impaired or depleted" by the sale of the ships, while an important was not a decisive factor;

(5) It was not necessary to decide the nature of the present dividend as between life tenant and remainderman, because that principle would not be decisive in a tax case. Following *Tax Commissioner* v. *Putnam,* 227 Mass. 522, 532, 537;

(6) The dividend in question was not in form nor in reality a "distribution of capital" but rather was a dividend of "accumulated profits" as those words are used in the last paragraph of § 2 of St. 1916, c. 269 (see now G. L. c. 62, § 1);

(7) Argument that the income was not taxable to the complainant under St. 1916, c. 269, § 7 (now G. L. c. 62, § 7), because the increase in value of the property of the corporation came before January 1, 1916, was untenable. Following *Tax Commissioner* v. *Putnam*, 227 Mass. 522, 536;

(8) The tax law thus interpreted is not open to objection to its constitutionality on the ground that it is necessarily inequitable and disproportional and contrary to c. 1, § 1, art. 4 of the Constitution, and that it is not levied at a uniform rate throughout the Commonwealth upon the same classes of property.

COMPLAINT, filed in the Superior Court on January 13, 1920, and afterwards amended, under St. 1916, c. 269, § 20, for the abatement of an income tax assessed under St. 1916, c. 269, § 2, cl. b, and of an additional income tax assessed under St. 1918, c. 252.

The second paragraph of the complaint was as follows:

"2. That the American-Hawaiian Steamship Company is and has been for many years a corporation duly organized under the laws of the State of New Jersey; that the capital stock of said company is $5,000,000 divided into fifty thousand shares of the par value of $100 each; that the complainant owned on January 1, 1917, two thousand one hundred shares of the stock of said company and during that year bought fifty shares more thereof; that said corporation is engaged in the business of owning and operating steamships for profit and is not engaged in the business of dealing in steamships; that due to the unusual conditions prevailing during the war, it sold in December, 1915, two of its steamships which were delivered and paid for in 1916, that it sold during the year 1916 five other steamships which were paid for in 1916 and one steamship was sunk in the war zone in 1916, that all said eight ships except two were acquired previous to January 1, 1916, and said two had been contracted for previous to January 1, 1916 (one was put into commission on February 23, 1916, the other on April 3, 1916); that said ships were carried upon the books of the corporation on January 1, 1916, at the actual cost thereof less a depreciation of five per cent, leaving the net book value thereof $2,986,466.19; that the net proceeds derived from the sales of said ships and from the collection from underwriters of insurance upon the ship sunk amounted to $11,461,564.22, and that the company thus realized an appreciation of $8,475,098.03 over the book value

of said ships; that the net market value of said ships on January 1, 1916, was $10,000,000."

The respondent in his answer admitted the foregoing allegations except that the net market value of the ships on January 1, 1916, was $10,000,000. The parties executed an agreed statement of facts, in which it was stated that "the fair market value of" the eight ships in question on January 1, 1916, "was in excess of $10,000,000," and that "all" of the eight ships in question "had been paid for either by the moneys originally subscribed by the stockholders in payment for their shares of capital stock or out of the earnings of the company appropriated for that purpose." Other facts agreed to are described in the opinion.

The complaint came on to be heard by *McLaughlin*, J., who reserved it for determination by this court upon the pleadings and agreed statement of facts.

*E. D. Fullerton*, for the complainant.

*A. Lincoln*, Assistant Attorney General, for the respondent.

RUGG, C.J. This is a complaint under St. 1916, c. 269, § 20, now G. L. c. 62, § 47, for abatement of an income tax. The complainant in 1917 owned shares of stock in the American-Hawaiian Steamship Company, a New Jersey corporation. The money originally subscribed for capital stock of that corporation had been invested in steamships. Thereafter earnings of the company were invested in other ships and remaining earnings not otherwise required for uses of the company were distributed as dividends. Among other ships owned by the company on January 1, 1916, were eight, the fair market value of which was in excess of $10,000,000, and the actual cost of which was $4,662,535.24. The company had from year to year charged off a five per cent depreciation on all its ships, so that the book value of the eight here in question was $2,986,466.19. Seven of these were sold and the other sunk, for which insurance was received, and for these eight ships the company received $11,461,564.22. Hence, by these transactions the company derived a book profit of $8,475,098.03. The company in 1917 distributed in a dividend to its stockholders the entire amount of this book profit on ships, together with a large amount of other profit, but still retained property and assets, in excess of its liabilities, equal to or greater than its outstanding capital stock.

After making the above sales the company expected to build or purchase other ships to replace the ships it had parted with, but owing to the unusual conditions which at about or soon after that time began to appear and thereafter prevailed for many months with increasing seriousness, caused by the growth of submarine warfare and later by the entrance of the United States into the Great War, it became impossible for the company to build, purchase or otherwise acquire steamships for its business, although it endeavored so to do. The result was that the capacity of the corporation to carry on its business was seriously impaired and depleted.

The contention of the complainant is that the dividend thus paid to him as a stockholder was not a distribution of "accumulated profits" but was "distribution of capital" and hence that his share in that distribution is not taxable under the law. The contention of the tax commissioner is that this dividend, being a distribution of book profits leaving in the possession of the corporation net assets at least equal to its outstanding capital stock was a distribution of "accumulated profits" and that in any event the distribution of so much of the ship money as represented the excess of profits over the cost of the ships was a distribution of "accumulated profits."

The governing statutes are in these words: "Income of the following classes received by any inhabitant of this Commonwealth during the calendar year prior to the assessment of the tax shall be taxed at the rate of six per cent per annum: . . . (b) Dividends on shares in all corporations and joint stock companies organized under the laws of any State or nation other than this Commonwealth, . . . [with exceptions not here material] . . . No distribution of capital, whether in liquidation or otherwise, shall be taxable as income under this section; but accumulated profits shall not be regarded as capital under this provision." St. 1916, c. 269, § 2, cl. b and last paragraph of that section (see now G. L. c. 62, § 1, cl. b and cl. g).

The agreed facts do not show whether the original cost of these eight ships was paid out of capital or out of accumulated profits. The initial subscriptions made for shares of capital stock were invested in ships and other ships subsequently were purchased out of earnings.

The money from which the part of the dividend here in question

was paid was derived from what for convenience may be termed a sale, being the sale of seven ships and the insurance received from the loss of the eighth. Purchases of ships were in the nature of investment of capital assets, because the capital originally subscribed was used to buy ships. But earnings invested in ships were not necessarily segregated as capital stock of the corporation. Ships are personal property. *Taylor* v. *Carryl,* 20 How. 583, 598, 599. *Johnson* v. *Chicago & Pacific Elevator Co.* 119 U. S. 388, 398, 400. G. L. c. 59, § 4, cl. 1. Although ships are property of a peculiar nature, nevertheless investment in them comes within the same general rules as investments by corporations in other classes of personal property for purposes of gain. A corporation organized to conduct a mercantile business might invest its profits from time to time in the enlargement of its stock in trade. Great increase in value of that stock in trade might cause sale of a considerable part at a large profit, and business conditions might render unwise purchases by way of replacement. Distribution by dividend of profits thus arising hardly would be regarded commercially or legally as distribution of capital although the extent of the business thereafter carried on might be narrowed. *Hemenway* v. *Hemenway,* 181 Mass. 406, 411. *Bouch* v. *Sproule,* 12 App. Cas. 385, 402, 403. Profit derived by a corporation from the voluntary sale of part of its capital investment at a large advance over its cost was held to be income to the corporation under the definition adopted by the Supreme Court of the United States in *Eisner* v. *Macomber,* 252 U. S. 189, at page 207: "'Income may be defined as the gain derived from capital, from labor, or from both combined,' provided it be understood to include profit gained through a sale or conversion of capital assets." Referring to that decision, it was said in *Miles* v. *Safe Deposit & Trust Co. of Baltimore,* 259 U. S. 247, 253: "In that as in other recent cases this court has interpreted 'income' as including gains and profits derived through sale or conversion of capital assets, whether done by a dealer or trader, or casually by a non-trader, as by a trustee in the course of changing investments. *Merchants' Loan & Trust Co.* v. *Smietanka,* 255 U. S. 509, 517–520." Profit gained from a sale of capital assets in excess of cost was held taxable as income in *Doyle* v. *Mitchell Brothers Co.* 247 U. S. 179, 185. To the same effect is *Eldorado Coal & Mining Co.* v. *Mager,* 255 U. S. 522. If

that profit was income to the corporation, it is difficult to see how its distribution in cash to the stockholder can be anything other than income to him. It was said in *Lynch* v. *Hornby,* 247 U. S. 339, at page 344: "Dividends are the appropriate fruit of stock ownership, are commonly reckoned as income, and are expended as such by the stockholder without regard to whether they are declared from the most recent earnings, or from a surplus accumulated from the earnings of the past, or are based upon the increased value of the property of the corporation." Income in the federal income tax law there under consideration was construed to include dividends declared from an "accumulated surplus made up of past earnings or increase in value of corporate assets." See, however, in this connection, *Gray* v. *Darlington,* 15 Wall. 63, 66; *Lynch* v. *Turrish,* 247 U. S. 221, 230; *Doyle* v. *Mitchell Brothers Co.* 247 U. S. 179, 185; *Hays* v. *Gauley Mountain Coal Co.* 247 U. S. 189, 193; *Southern Pacific Co.* v. *Lowe,* 247 U. S. 330, 335; *Eisner* v. *Macomber,* 252 U. S. 189.

The only part of the total sum received from the sale of the ships which was paid in dividends was the book profit, that is, the difference between the sale price and the value of the ships as shown on the books of the company.

Ordinarily actual profit or income which accrues from purchase and sale is the difference between the cost and sale prices. That is true, for example, of stocks. *Brown* v. *Commissioner of Corporations & Taxation,* 242 Mass. 242. But a ship in use is a different kind of property. It must be kept seaworthy in order that it may make voyages and earn profits. But, beside that, it deteriorates from age and other causes even though current repairs are made. A fixed annual percentage on the cost of material structures for depreciation, as a charge against profits, has come to be recognized business policy. *Stein* v. *Strathmore Worsted Mills,* 221 Mass. 86, 89–91. *Boston* v. *Treasurer & Receiver General,* 237 Mass. 403, 416. It might be difficult to ascertain by inquiry after the event the exact cost of a steamship by reference to its original cost and extraordinary repairs, as distinguished from those merely mending physical wear in order to keep ships in seaworthy condition. Therefore a reasonable method adopted by the corporation to ascertain current value of ships as part of its assets may be accepted as a measure of present value. Depre-

ciation in this sense is a reduction of the actual cost as matter of bookkeeping by a charge against earnings. It is based on cost and deterioration and well may be taken to represent reasonable reduction in capital value from year to year. It was the basis adopted by this corporation. It seems fair under all the circumstances to use it as the cost with which to compare the price obtained in case of sale in order to ascertain the profits.

The dividend in question thus was paid exclusively out of the profits obtained on the sale of ships. This was not dividend of capital assets. The subscriptions originally paid for capital stock were not distributed. Assets amounting to more than its capital stock are retained by the corporation.

The circumstance that the "capacity of the corporation to carry on business was impaired or depleted" by the sale of the ships, *Tax Commissioner* v. *Putnam,* 227 Mass. 522, 535, while an important is not a decisive factor. Accumulated profits well may have become so much a dependence in the conduct of corporate business as to render their distribution a serious reduction of its capacity to do business. The real question is whether the distribution is made from capital investment or from profits.

It is the general rule in this Commonwealth as between life tenants and remaindermen that cash dividends on corporate stock are treated as income and not as capital. *Talbot* v. *Milliken,* 221 Mass. 367, and cases there reviewed. But it is not necessary to decide the nature of the present dividend as between life tenant and remainderman, because it was held upon great deliberation that that principle would not be decisive in a tax case in *Tax Commissioner* v. *Putnam,* 227 Mass. 522, 532, 537.

In substance and effect the action of the corporation was a determination to continue its business on the basis of property and assets in excess of liabilities equal to or greater than its capital stock and to distribute by way of cash dividend a large profit arising from the sale of an investment. This was not in form or in reality a "distribution of capital" but rather a dividend of "accumulated profits" as those words are used in the statute. *Tax Commissioner* v. *Putnam,* 227 Mass. 522.

It becomes unnecessary to advert to distinctions between capital stock and capital. See *Commissioner of Banks, petitioner, in re Prudential Trust Co. post,* 64.

The argument that the income is not taxable to the complainant under St. 1916, c. 269, § 7, now G. L. c. 62, § 7, because the increase in value of the property of the corporation came before January 1, 1916, is met by the decision to the contrary in *Tax Commissioner* v. *Putnam*, 227 Mass. at page 536. See *Brown* v. *Commissioner of Corporations & Taxation*, 242 Mass. 242. See also *Lynch* v. *Hornby*, 247 U. S. 339.

The decision in the Putnam case also disposes of the contentions that the tax law thus interpreted is necessarily inequitable and disproportional, contrary to c. 1, § 1, art. 4 of the Constitution, and that it is not levied at a uniform rate throughout the Commonwealth upon the same classes of property as required by art. 44 of the Amendments to the Constitution, where the same questions in substance were presented. They require no further discussion at this time.

Any other conclusion would be impossible without overruling *Tax Commissioner* v. *Putnam*, 227 Mass. 522, 534, 535, and *Tilton* v. *Tax Commissioner*, 238 Mass. 596. The facts in the present case are less strong for the petitioner than in those decisions because in the case at bar the dividend was in cash and not as there by issue of stock dividends. The actual decision in *Moore* v. *Tax Commissioner*, 237 Mass. 574, is not at variance.

*Complaint dismissed with costs.*