ALICE R. ALLEN & others, trustees, vs. COMMISSIONER OF
CORPORATIONS AND TAXATION.

Suffolk. February 3, 1930. — September 15, 1930.

Present: RUGG, C.J., PIERCE, WAIT, & FIELD, JJ.

*Tax*, On income: gain on sale of "rights." *Statute*, Construction.

When a stockholder in a corporation receives from the corporation rights
to subscribe for more of its stock and later sells them for a price greater
than a market value which they had at the time he received them, he
is taxable, under G. L. c. 62, §§ 5 and 7, as amended, respectively, by
§§ 1 and 2 of St. 1928, c. 217, only upon the excess of such sale price
over the market value of the rights when acquired by him, and not
upon the entire sale price.

If the meaning of a statute is plain, it cannot be affected by resort to
proceedings incident to its passage or by a construction put upon it
by a department of the Commonwealth charged with its application
and enforcement.

COMPLAINT, filed in the Superior Court for the county of
Suffolk on October 5, 1929, under G. L. c. 62, § 47, by trustees
under the will of Thomas Allen, for abatement of an income
tax.

The complaint was heard by *Lummus*, J., upon an agreed
statement of facts. Material facts were that the complain-
ants as trustees owned during the calendar year 1928 one
thousand and nine shares of stock of American Telephone
and Telegraph Company, a New York corporation, upon
which they received on June 1, 1928, rights to subscribe
for new stock of that corporation. The market value of
the rights thus declared and received on June 1, 1928,
was $14.3125 per right. The total value of the rights
thus acquired by the complainants was $14,441.32. The
complainants sold the rights for the sum of $15,484.71,
which sum they received during the calendar year 1928,
and reported the transaction in their Massachusetts income
tax return upon the fiduciary return blank furnished by
the department of corporations and taxation. On Sep-

tember 1, 1929, the commissioner of corporations and taxation assessed upon the complainants an income tax at the rate of three per cent on the whole amount received by the complainants from the sale of the said rights to wit, $15,484.71, which tax was in the amount of $464.54. The tax then was paid under protest, an application for abatement was made to and was refused by the commissioner, and these proceedings were instituted.

A paragraph of the statement of agreed facts was as follows:

"If it be material, it is agreed that since the enactment of St. 1916, c. 269, the defendant commissioner and his predecessor in office have uniformly construed the said income tax statute as imposing a tax at the rate of three per cent upon the sale of rights declared upon corporate stock owned by inhabitants of Massachusetts, the said tax on rights being levied upon the whole amount received by any Massachusetts inhabitant from the sale of the said rights declared upon stock owned by him. This construction of St. 1916, c. 269, especially §§ 5 (c) and 7 thereof, and of G. L. c. 62, especially §§ 5 (c) and 7 thereof, has been uniform since 1916, despite amendments to the said acts, chapters, and sections, including the amendment to G. L. c. 62, § 7, contained in St. 1928, c. 217, § 2."

The contention of the complainants was that the tax should have been assessed on the difference between the amount for which the rights were sold and their value when they were acquired by the complainants, i.e., on $1,043.39; and should be only $31.31.

The judge ordered judgment for the respondent. The complainants appealed.

*T. Allen,* for the complainants.

*R. A. Cutter,* Assistant Attorney General, for the respondent.

RUGG, C.J.   This is a complaint for the abatement of an income tax for the year 1928. The question relates to the method of assessment of a tax on income received from the sale of rights to subscribe for new stock in a New York corporation. These rights were received by the

complainants by virtue of their ownership of shares of stock in that corporation. The complainants contend that the basis for the computation of the tax is the difference between the market value of the rights when received and the price for which they were sold. The defendant contends that the basis is the price for which the rights were sold without any deduction. The settlement of this controversy depends upon the correct interpretation of relevant provisions of the income tax law in the light of previous decisions. The governing sections of the income tax law are G. L. c. 62, § 5, as finally amended by St. 1928, c. 217, § 1, and G. L. c. 62, § 7, as finally amended by St. 1928, c. 217, § 2, the latter chapter by its § 3 having been made applicable to income received in 1928 and thereafter. Previous changes in these sections of the income tax law bear no indication of intent to alter their meaning and effect, as found in St. 1916, c. 269, so far as concerns present issues. They were made for brevity and clarity, and wrought no modification in the substance of the preexisting law. The quotations of the pertinent provisions of G. L. c. 62, §§ 5 and 7, as amended, now to be made, show by italics the words added by c. 217. Section 5 (c) as finally amended: "Income of the following classes received by any inhabitant of the commonwealth during the preceding calendar year shall be taxed as follows: . . . (c) The excess of the gains over the losses received by the taxpayer from purchases or sales of intangible personal property, whether or not said taxpayer is engaged in the business of dealing in such property, shall be taxed at the rate of three per cent per annum. *When shares of new stock of the company issuing the same received as a stock dividend or shares of stock which were the basis of such stock dividend are sold, the basis of determination of the gain or loss shall be the cost, or value when acquired otherwise than by purchase, of the stock which was the basis of such stock dividend, apportioned over the old and new shares of such company held after the receipt of such stock dividend.* Any trustee or other fiduciary may charge any taxes paid under this paragraph against principal in any accounting which he

makes as such trustee.   If, in any exchange of shares upon the reorganization of one or more corporations or of one or more partnerships, associations or trusts, the beneficial interest in which is represented by transferable shares, the new shares received in exchange for the shares surrendered represent the same interest in the same assets, no gain or loss shall be deemed to accrue from the transaction until a sale or further exchange of such new shares is made." Section 7 as finally amended:   " . . . In determining gains or losses realized from sale of capital assets, the basis of determination, in case of property owned on January first, nineteen hundred and sixteen, shall be the value on that date, and in case of property acquired *by purchase* thereafter, *the cost thereof.   If the property other than stock dividends in new stock of the company issuing the same was acquired otherwise than by purchase, the basis of determination of the gain or loss shall be* the value on the date when it *was so* acquired."

The nature of the right to subscribe for new stock issued to shareholders on a specified date has been discussed in several of our decisions in connection with questions arising between life tenant and remainderman.   It was said by Bigelow, C.J., in *Atkins* v. *Albree,* 12 Allen, 359, 361: "The right or privilege to take new shares in a corporation . . . is a benefit or interest which attaches to stock . . . as inherent in the shares in their very creation."   It is an attribute appertaining to each share.   It is treated as property capitalized by the corporation.   It is a constituent part of each share.   It partakes in some aspects of the features of capital.   *Hyde* v. *Holmes,* 198 Mass. 287, 293.   Whatever may be the nature of the right to subscribe for new shares, it is plain that such right does not come to the shareholder nor become a thing of value transferable and salable until actually declared and issued by the corporation.   As gains from the sale of capital assets such rights when sold and realized in cash have the characteristics of income under art. 44 of the Amendments to the Constitution and may be taxed as such.   Gains derived from the sales of such rights are gains "received by the taxpayer from purchases or sales of intangible personal prop-

erty" under § 5 (c) of the income tax law. *Tax Commissioner* v. *Putnam*, 227 Mass. 522 at 534. It was held in *Parker* v. *Commissioner of Corporations & Taxation*, 258 Mass. 379, that the effect of St. 1920, c. 352, now G. L. c. 62, § 1 (b), was to exempt inhabitants of the Commonwealth from taxation as income on dividends paid in shares of stock in foreign corporations issuing the same, on the same footing as other dividends of such corporations were taxable as income under St. 1916, c. 269, § 2 (b), and in place thereof to render taxable as income from that source only gain received from the sale of such stock declared as dividends as and when sold under St. 1916, c. 269, § 5 (c), now G. L. c. 62, § 5 (c). The vital question in that case was the correct method for calculating that gain. It was held that G. L. c. 62, § 7, furnished the rule to be followed, namely, the difference between the value of such stock in the market on the date when received by the shareholder and the cash price received for it when sold. That case applied to stock dividends in foreign corporations, when removed from taxation as income and thus taken out of the classifications with other dividends in foreign corporations for income tax purposes, the rule applicable to all gains from purchases or sales of intangible property acquired after the income tax law took effect, namely, the difference between its value when acquired and its sale price. The force and effect of the decision in the *Parker* case was that dividends paid in shares of stock in foreign corporations issuing the same had been removed for income tax purposes from classification with other dividends on stock in foreign corporations, and placed in the same classification with other intangible personal property as to gains on sales. This latter classification includes rights to subscribe for new shares of stock in foreign corporations. In the year following the decision in the *Parker* case there was enacted St. 1928, c. 217; manifestly the alteration made by its § 1 in G. L. c. 62, § 5 (c), as previously amended was designed to provide a different statutory method for calculating the gains upon the sale of stock received as a stock dividend from the statutory method which existed as the basis for the *Parker* decision. How far

the reasoning of the *Parker* decision is now applicable to the income tax on stock dividends is not before us at this time. The alteration made by said § 1 has no bearing upon the income tax on rights to subscribe for new shares of stock. It is not relevant to the question now to be decided. It relates to a different subject. But alteration made in G. L. c. 62, § 7, by § 2 of said c. 217, so far as applicable, governs the case at bar. That alteration affected the method of determining all gains or losses realized by the taxpayer from all sales of capital assets, including those realized from the sale of rights to subscribe for new shares of stock as well as from all other sales. Gains from the sale of such rights have been classified, under the income tax law since the adoption of the Forty-fourth Amendment, with gains derived from the sale of intangible property as capital assets. The provision of the final sentence of said § 7 as amended by § 2 of said c. 217 already quoted is precisely applicable to the sale of rights to subscribe for new shares of capital stock. Such rights constitute property "other than stock dividends in new stock of the company issuing the same" and such rights are acquired "otherwise than by purchase." "Purchase" in this context is used in its ordinary commercial sense. *Clarke* v. *Treasurer & Receiver General*, 226 Mass. 301, 303. It is indubitable that such rights may have a market value when issued. It is matter of common knowledge that such rights frequently do have substantial market value when issued, as they did in the case at bar. The inevitable result is that under the concluding words of that section "the basis of determination of the gain or loss shall be the value" of such right to subscribe for new stock "on the date when it was so acquired." It may be that the difference thus made the basis for the income tax will not be large and the tax itself will be correspondingly small. That was within the province of the Legislature. The decision in the *Parker* case was that the word "value" in G. L. c. 62, § 7, meant market value and not acquisition value. 258 Mass. 379, at pages 382, 383. Unless that decision is overruled, the word "value" must have the same meaning in the amended form of that section now found in St. 1928,

c. 217, § 2, governing the case at bar. The amendment has no effect on the meaning of "value." The meaning established by the *Parker* decision must stand.

It has been earnestly argued that this result was not intended by the General Court; the history of the origin of said c. 217 is invoked in support of that argument. The plain meaning of· a statute cannot be affected by resort to proceedings incident to its passage. Light may be sought from that source only to illumine statutory language of doubtful import. Other information than that afforded by the words of the statute can be examined only to aid in the solution of an ambiguity. We can only interpret the words of the statute: we cannot speculate as to the probable intention of the Legislature apart from those words. *Selectmen of Natick* v. *Boston & Albany Railroad,* 210 Mass. 229, 232. *Old South Association* v. *Boston,* 212 Mass. 299, 304–305. *United States* v. *Missouri Pacific Railroad,* 278 U. S. 269, 278.

It is strongly urged that this result is contrary to the decision in *Tax Commissioner* v. *Putnam,* 227 Mass. 522, 532, 533, 534, and the practice of the department. Several observations are to be made respecting this contention. (1) The main point for determination in the *Putnam* case concerning taxation of gains derived from the sale of rights to subscribe for new shares of stock was whether such gains were taxable at all as income. That is the way the question is stated in 227 Mass. at page 524. That point was much contested at the argument of that case. The discussion is confined to the question stated. All that was said was with reference to the ultimate answer to that question. The method of calculating the tax, if such gains should be held to be subject to taxation, was not before the court. No income tax had been assessed. The defendant in that case refused to make return of such gains. The proceeding was mandamus to compel him to make return on the theory that such gains constituted income to the end that an income tax might be assessed. In these circumstances the statements in that opinion to the effect that such rights "come to the stockholder as a gratuity," that they "are a new thing of value which he did not pos-

sess before," and that the "amount for which he sells them is a gain," were used by way of argument to show that in their nature gains arising from the sale of such rights con- stituted income which might be treated by the General Court as income under the Forty-fourth Amendment. That state- ment cannot rightly be wrested from its context and con- strued as an interpretation of the basis of taxation established by the statute. See *Vigeant* v. *Postal Telegraph Cable Co.* 260 Mass. 335, 343. (2) The governing statute in the case at bar, St. 1928, c. 217, § 2, is different from St. 1916, c. 269, § 7, in force at the time of the decision of the *Putnam* case. As already pointed out, the words of the latest amendment, in view of the decision in *Parker* v. *Commis- sioner of Corporations & Taxation, supra,* make clear the intention of the Legislature to tax gains from the sale of such rights, not on the basis that the amount for which they are sold is a gain, all of which may be made subject to the income tax, but only on the basis that the gain subject to the tax is measured by the difference between the market value of such rights when received by the taxpayer and the market value for which they are sold. That is the measure established for ascertaining the gain or loss from the sale of all capital assets (except stock dividends) acquired otherwise than by purchase. It com- prehends the gains from the sale of rights to subscribe in new stock. (3) The departmental construction of St. 1928, c. 217, § 2, the statute at present governing the subject, has not been long continued and the rule as to weight to be attributed to such construction when long continued and sanctioned by the acquiescence of the Legislature illustrated by *Burrage* v. *County of Bristol,* 210 Mass. 299, 301, is not applicable. Moreover, that rule cannot be invoked against the plain words of a statute.

It follows that abatement ought to have been granted. The order of judgment for the defendant is reversed. Decree is to be entered granting abatement on the footing that the gain of the complainants subject to tax as income was $1,043.39.

*Ordered accordingly.*