HERBERT A. WILDER & another, trustees, *vs.* TAX COMMISSIONER.

Suffolk.    November 14, 1919. — January 9, 1920.

Present: RUGG, C. J., BRALEY, DE COURCY, PIERCE, & JENNEY, JJ.

*Tax,* On income.    *Capital and Income.    Corporation,* Dividend.    *Words,* "Dividend."

A payment to holders of six per cent cumulative preferred stock of a foreign corporation, upon which there had accumulated thirty-three and one half per cent of undeclared dividends, of seven and one half per cent of the par value of the stock in cash, fourteen per cent in new six per cent cumulative preferred stock and twelve per cent in common stock, made from the accumulated earnings of the corporation and in accordance with a vote of the directors declaring the payment to be a dividend, although it was made as a part of a comprehensive plan readjusting the corporation's bonded debt and providing for its future financial requirements, was *held* to be a dividend taxable as income under St. 1916, c. 269, § 2 (b).

APPEAL under St. 1916, c. 269, § 20, from a refusal of the Tax Commissioner to abate an income tax assessed upon the petitioners.

In the Superior Court the appeal came on to be heard by *J. F. Brown,* J., upon the pleadings and a stipulation as to facts. The material facts are described in the opinion. The judge reported the case to this court for determination.

*E. E. Kent,* for the petitioners.

*W. H. Hitchcock,* Assistant Attorney General, for the respondent.

DE COURCY, J.  On June 1, 1917, the petitioners were the owners of seven hundered and fifty-six and one fourth shares of the preferred stock of the International Paper Company, a New York corporation.  The company was in arrears to the extent of thirty-three and one half per cent in declaring the six per cent cumulative dividends to which owners of this stock were entitled in preference to the payment of any dividends upon the common stock.  On the preferred stock of the petitioners these accumulations amounted to $25,334.38.  They received in payment or settlement thereof, as hereinafter set forth, the sum of $5,671.87 in cash, one hundred five and seven eighths shares of the preferred stock of the market value of $8,152.34, and ninety and three fourths shares of common stock of the market value of $3,993; a total of $17,817.21. The Tax Commissioner assessed thereon a tax of $1,175.95; and, upon his denial of their application for an abatement, the petitioners seasonably appealed to the Superior Court.

The sole question before us is whether the cash and shares of stock received by the petitioners constituted a "dividend" within the meaning of § 2 of the income tax law, St. 1916, c. 269.  The provisions of this section here applicable are as follows: "Income of the following classes received by any inhabitant of this Commonwealth during the calendar year prior to the assessment of the tax shall be taxed at the rate of six per cent per annum: . . . (b) Dividends on shares in all corporations and joint stock companies organized under the laws of any State or nation other than this Commonwealth, except . . .

"No distribution of capital, whether in liquidation or otherwise, shall be taxable as income under this section; but accumulated profits shall not be regarded as capital under this provision."

The material facts relating to this alleged "dividend" are as follows: On January 31, 1917, the International Paper Company and its subsidiary companies had outstanding bonded debt amounting to about $10,000,000 which would become due in the year 1918, about $727,000 maturing in 1919, and more which would not become due in the immediate future.  The accrued cumulative dividends on the outstanding preferred stock amounted to $7,506,-244.50.  The management of the company determined upon a comprehensive plan, whereby the bonded debt would be readjusted and future financial requirements of the corporation pro-

vided for by an issue of not exceeding $20,000,000 thirty-year bonds secured by a first and refunding sinking-fund mortgage. As part of the plan it was decided to adjust the accumulated dividends. In full settlement of the thirty-three and one half per cent unpaid dividends the directors voted to offer to the preferred stockholders seven and one half per cent of the face value of their holdings in cash, fourteen per cent in six per cent cumulative preferred stock, and twelve per cent in common stock.

In his letter to the stockholders, January 31, 1917, the president stated: "The Directors of the Company, therefore, have come to the conclusion that no plan for adjustment of the cumulative dividends is now practicable without ample provision at the same time for the Company's future capital requirements," and "Your Directors are firmly of the opinion that it would not be wise nor in the interest of the stockholders to attempt to liquidate the accumulated dividends in cash, and that by the proposed plan the equity of the stock in the already valuable property which the Company owns will be greatly increased." The agreement for deposit of preferred stock contained, among other references to the liquidation and discharge of the accumulated dividends, the following: "If the said offer for adjustment of the deferred dividends on said preferred stock shall be accepted by the holders of such an amount of the preferred stock as, in the judgment of the Committee and of the Company, shall be sufficient, the same shall be consummated and carried out, and the accumulated deferred dividends shall be paid as therein provided. The payment of the said dividends may be made directly to the holders of certificates of deposit or to the Committee as their representatives, as may be determined by the Committee and the Company, and such payment so made shall constitute and be deemed to be a payment and discharge in full of all deferred dividends upon the preferred stock so deposited hereunder; and the fact that such deferred dividends have been paid in full may be stamped upon the certificates of stock so deposited if the Committee and the Company shall deem it necessary to do so."

After the committee representing the preferred stockholders had notified the company that it accepted the offer on behalf of the said stock amounting to one hundred ninety-six thousand two hundred thirty-five shares of the par value of $19,623,500,

the board of directors adopted certain preambles and resolutions, among which were the following:

"Whereas the Company deems the amount of stock whose holders have accepted said offer by depositing the same or by agreeing in writing to accept said plan and be bound thereby, sufficient to justify it in confirming said offer and making the plan operative; and

"Whereas there remains unissued of the capital stock of the Company originally authorized, to wit, 250,000 shares of preferred stock and 200,000 shares of common stock, an amount of common and preferred stock which, in connection with certain amounts of common and preferred stock heretofore issued and now held by the Company in its treasury, will be sufficient to provide the amounts required for the adjustment of such deferred dividends; and,

"Whereas the surplus of this Company accumulated from earnings and representing the value of its assets in excess of the capital stock, funded debt and other liabilities and reserves, amounted on December 31, 1916, to $16,238,743, and at this date is at least equal to the said amount; . . .

"Now, Therefore, Be it resolved: . . .

"2. That for the purpose of adjusting and settling in full the deferred cumulative dividends upon the outstanding preferred stock of this Company, a dividend of 33½% upon such stock is hereby declared, payable 7½% in cash, 14% in preferred stock, and 12% in common stock, and that such dividend shall be paid to the registered holders of certificates of deposit of such preferred stock of record on June 1, 1917, upon surrender to the Bankers Trust Company, depositary, of such certificates on or after that date; and that such dividend shall be paid on or after that date to the holders of undeposited preferred stock who shall present to the Company their certificates of preferred stock, to be stamped with a notation thereon to the effect that the accumulated dividends have been settled and paid in full. . . .

"4. That the common and preferred stock issued on account of such accrued dividend shall be charged against the surplus of the Company derived from earnings which accrued prior to March 1, 1913, and that the cash paid on account of said dividend shall be charged against the surplus of the Company derived from earnings accrued subsequent to March 1, 1913.

"5. That upon the payment of said dividend to any holder of any preferred stock, there shall be stamped, printed or engraved upon the certificates of preferred stock delivered and returned to such stockholder, a statement of such payment in the following form:

"All deferred dividends accrued prior to October 1, 1916, paid in full."

It is plain from the foregoing that the money and stock were not received by the petitioners in payment of any debt due to them. They were not creditors. They would have no enforceable claim against the corporation unless and until a dividend should be declared. *Field* v. *Lamson & Goodnow Manuf. Co.* 162 Mass. 388. *Lee* v. *Fisk,* 222 Mass. 418. The money they received was paid from the accumulated earnings of the corporation, and the shares of stock were issued by a capitalization of, and were accordingly based upon, accumulated earnings of the corporation. In the offer made to the stockholders, and in the agreement under which the stock was deposited, the proposed distribution was referred to as a dividend; and, what seems controlling, the vote of the board of directors authorizing the payment, was in express terms the declaration of a dividend. Indeed it is not suggested that the corporation could legally distribute its profits among the joint owners except as a dividend. See *Ford* v. *Easthampton Rubber Thread Co.* 158 Mass. 84. It was payable to all the preferred stockholders alike. Those, if any, who refused to accept this form of payment of the accumulated dividends, presumably will wait for the payment of the thirty-three and one half per cent in cash if and when dividends shall be paid on the common stock. But the certificates of the petitioners are of the so called "S" series, and have printed upon them the statement: "All deferred dividends accrued prior to October 1, 1916, paid in full."

The word "dividend" "carries no spell with it." *Gardner Savings Bank* v. *Taber-Prang Art Co.* 189 Mass. 363, 365. As ordinarily used, it is that portion of the profits which a corporation sets apart for distribution among its shareholders. While usually in cash, it is not necessarily so, but may be issued in the form of stock or notes. *Boston Safe Deposit & Trust Co.* v. *Adams,* 219 Mass. 175. *Gray* v. *Hemenway,* 223 Mass. 293. *Tax Commissioner* v. *Putnam,* 227 Mass. 522. As used in the federal "Revenue Act of 1918,"

it is defined as "any distribution made by a corporation . . . to its shareholders or members, whether in cash or in other property or in stock of the corporation, out of its earnings or profits." U. S. St. 1919, c. 18, § 201.

In view of the above mentioned facts relating to the payment by the corporation of the cash and stock under consideration, we are of opinion that this income was received by the petitioners essentially as a "dividend" within the meaning of the income tax statute notwithstanding the attendant compromise of their inchoate rights to a dividend wholly in cash. The petition for abatement must be denied.

*Ordered accordingly.*