HENRY O. CUSHMAN & others, administrators, *vs.* JOSEPH A. NOE & others.

Suffolk.    June 27, 1922. — September 14, 1922.

Present: RUGG, C.J., BRALEY, DE COURCY, CROSBY, & CARROLL, JJ.

*Equity Pleading and Practice*, Exceptions; Appeal; Master: character of report, exceptions to report. *Deed*, Consideration. *Sale*. *Equity Jurisdiction*, To set aside sale and deed which were mere pretence.

It is preferable equity practice that questions of law arising in a suit in equity be brought to this court by appeal from a final decree rather than by exceptions to rulings of the trial judge.

Where, in a suit in equity by the administrator of the insolvent estate of a woman, who had conveyed certain personal property to one who for many years had been employed by her and her husband and had been a member of her household, to get possession of the property on the ground that the conveyance was without consideration and a mere pretence, a master finds that the plaintiff's intestate at the time of the conveyance was a woman of business experience, that she had been unsuccessful in business, that at about the time of the conveyance she had concealed jewelry in a safety deposit box under an assumed name, that she was insolvent and was being pressed by creditors, that property of hers in the State of Michigan was being levied on, and that the daughter of the defendant had been treated by her as her own child, a conclusion is warranted that the conveyance to the defendant was without consideration and was a mere pretence, especially where the master also finds that he does not believe testimony of the defendant to the effect that the consideration for the conveyance was money paid by the defendant to the plaintiff's intestate at her request.

A conveyance of personal property by an insolvent person by an instrument under seal without actual consideration may be set aside after the grantor's death by the administrator of his estate although the grantee did not share in a design of the grantor to defraud his creditors, there having been no sale in any true sense.

Exceptions to a report of a master in a suit in equity based on objections that the "master, in excess of his authority and to the prejudice of the defendants, . . . included in his report conjectures, surmises and suspicions, and . . . founded thereon findings and inferences of material facts," were overruled because, disregarding all parts of the report justly susceptible of such characterization, or open to criticism for other reasons, enough positive findings of fact were left to support the ultimate conclusions.

BILL IN EQUITY, filed in the Superior Court on March 11, 1916, and afterwards amended, by the administrators of the estate of Matilda M. Chesbrough against Joseph A. Noe, William S. Austin, Metropolitan Storage Warehouse Company and A. B. Comstock, trustee in bankruptcy of Fremont B. Chesbrough, husband of Matilda M. Chesbrough, to gain possession of certain personal property transferred by the plaintiffs' intestate to the defendant Noe by a conveyance alleged to have been "fictitious and made without consideration and for the purpose of concealing and hiding said property" and, by a conveyance alleged to have been of the same character, transferred by the defendant Noe to the defendant Austin.

An interlocutory decree was ordered on March 15, 1916, enjoining the defendant Noe from transferring the property from the storage warehouse pending the further order of the court.

On May 24, 1917, the suit was referred to a master. On June 13, 1921, the master filed a report.

Material findings by the master were in substance as follows: The Chesbroughs, husband and wife, "belonged conspicuously to the class of *nouveaux riches*." Mrs. Chesbrough was a woman of business experience, although she had been unsuccessful in business. The defendant "Noe and his wife Josephine were uneducated people. Noe had worked for Chesbrough in the lumber business as a general man around the lumber mill, as cook's helper, teamster, watchman, fireman on a tug, and the like. In 1892 he and his wife and their little girl Elsie, who was then about four years old, went to live with the Chesbroughs at a house which they built in Bay City, Michigan. Noe was employed as a general man about the place and later as a chauffeur. His wife was employed as a housekeeper, cook, servant and companion to her mistress. The combined wages of the husband and wife were forty dollars a month, in addition to their board and lodging, . . . from 1892 until Mrs. Chesbrough's death," which occurred on March 11, 1915. In "addition, Mrs. Chesbrough bought them clothes and occasionally made them presents of money. The Noes sat and ate with the Chesbroughs except when they had company. The Noes were 'help' in the old New England sense. Though no more educated or cultivated than ordinary domestic servants, they occupied a very different position in the

Chesbrough household. Elsie Noe [their daughter] . . . was brought up as if she were the daughter of Mrs. Chesbrough. She was educated, taught to play the piano and enjoyed considerable advantages. Her husband [the defendant Austin] was intellectually and socially much superior to the parent Noes."

In September, 1914, Mrs. Chesbrough conveyed the personal property in question to the Noes, and, "about this time, . . . had hired a safe deposit box under the assumed name of Mary Russell and had deposited in it her jewelry, which turned out to be worth $13,000 or $14,000." Adversary proceedings against her property in Bay City, Michigan, had been begun. She was insolvent.

The Noes evidence tended to show that, because of the state of her affairs in Bay City, Mrs. Chesbrough determined to go there and, being in need of money, came to Noe, procured from him $1,900, for which she conveyed to him by deed under seal the property in question; and that, subsequently, the Noes conveyed the property for certain bonds to the defendant Austin. As to the conveyance to Austin, the master found, "It is impossible for me to believe that this was a genuine transaction . . . the sale to Austin was a mere pretext. There was nothing real about it." As to the conveyance to the Noes, the master found: "I am satisfied and find that no consideration was paid and that the whole thing was a sham. I find that it was understood between Mrs. Chesbrough and the Noes that, for a purpose of hers not disclosed to them, they were to hold the title for her until she asked them to restore it and that her sudden death left them in a position where they could assert an equitable title as well as a legal title and invent this story of theirs about paying a valuable consideration and becoming real purchasers of the property. Noe was a reckless and untrustworthy witness. His and his wife's story bristles with improbabilities and cannot be swallowed. The value which Mrs. Chesbrough put on the property in storage was high. Even though it was in a warehouse, she carried $7,500 of insurance on it. She was fond of her pictures and had been collecting them for years. It is extremely improbable that she would have been willing to sell them for $1,900. It is also improbable that having really sold them she should not have disclosed the sale to her husband and counsel. The Noes had deposited between twenty-two and twenty-three hundred dollars in savings banks in the

summer of 1914. It is extremely improbable that they would have kept an equal amount in a trunk at the seashore earning no interest and exposed to fire and theft. It is extremely improbable that Mrs. Chesbrough, knowing that they had this money would have permitted them so to neglect and expose it. It is extremely improbable that Noe having taken $1,900 out of his hoard and having got a bill of sale in place of the money should not have kept the paper and put it back with the three or four hundred dollars which he says he had left in his trunk instead of handing it back to Mrs. Chesbrough for safekeeping. His story makes him trust her much too much and much too little. It is extremely improbable that a man in Noe's position, having confidence in his title as an out and out buyer of the property, and having no use for the piano or pictures or the furniture, should have made no attempt to realize on them from October, 1914, to January, 1916, — that he should have stored them in a warehouse instead of sending them to an auction room. It is extremely improbable that he should have given his original bill of sale to Austin simply for safekeeping when he did not hesitate to keep over $2,000 of money in a trunk in his bedroom. It would take much more credible evidence than the evidence of the Noes to overcome these improbabilities. The more I have thought about the matter the more impossible it has become for me to believe what they say."

The report also contained the following statement: "No evidence was introduced by the plaintiffs to contradict directly the testimony of the Noes that they paid Mrs. Chesbrough money for the bill of sale. I have arrived at my conclusions from the appearance of the Noes on the witness stand, which I cannot, of course, reproduce in words, from the facts and circumstances surrounding the alleged delivery of the bill of sale, all of which I have set forth fully, and from the subsequent conduct of the Noes and the defendant Austin which I have also described in detail. Except for the appearance of the Noes, I have set forth and described in this report everything from which I drew my inferences and on which I base my general findings."

The defendants Noe and Austin filed twenty-four objections and exceptions to the master's report. The first two exceptions were to the effect that the "master, in excess of his authority

and to the prejudice of the defendants, has included in his report conjectures, surmises and suspicions, and has founded thereon findings and inferences of material facts." The third exception was based on an allegation that the "master has made findings of material facts as to which the plaintiffs have the burden of proof, which findings are founded solely upon either disbelief of evidence of the defendants or conjecture or surmise, or upon inferences deducted therefrom."

Other exceptions were to the effect that certain specified conclusions of the master were not warranted by the subsidiary facts found by him or by inferences therefrom, but were "based on conjecture, surmise, and suspicion only, or upon mere disbelief of the evidence of the defendants;" and that the plaintiffs had not sustained the burden of proof that was upon them.

The exceptions to the master's report were heard by *Sanderson*, J., at which time the defendants Noe and Austin presented requests for rulings which dealt both with the questions of law raised by their exceptions to the report and also with questions of law raised by the facts found by the master and bearing upon the matter of a final decree. The judge gave a part and refused a part of the rulings requested, and on December 13, 1921, ordered an interlocutory decree overruling the defendants' exceptions to the master's report and confirming the report, and a final decree granting the relief sought by the plaintiff and ordering the defendants Noe and Austin to pay to the defendant Metropolitan Storage Warehouse Company for storage charges the sum of $877.99 "together with the additional sum of forty-five cents per day for each additional day after November 7, 1921, which said merchandise shall be in the care and custody of the said Metropolitan Storage Warehouse Company," with a right to the plaintiffs to elect to pay the charges and have judgment and execution against the defendants Noe and Austin for the amount so paid. To such rulings and orders the defendants Noe and Austin alleged exceptions.

The case was submitted on briefs.

*I. R. Clark, N. B. Vanderhoof & A. E. Little,* for the defendants Noe and Austin.

*Lee. M. Friedman & P. A. Atherton,* for the plaintiffs.

RUGG, C.J. It has been repeatedly pointed out that the pref-

erable equity practice is to bring questions of law to this court by appeal from final decrees and not by exceptions. *McCusker* v. *Geiger*, 195 Mass. 46, 52. *Welsh* v. *Briggs*, 204 Mass. 540, 549. Assuming in favor of the defendants that their requests for rulings were rightly presented and all their exceptions are open and considering the record on its merits, no error of law is disclosed.

This is a suit in equity by administrators of the estate of Matilda M. Chesbrough seeking to set aside a sale of personal property in form executed by her during her life to the defendant Noe and another sale in form by him of the same property to the defendant Austin. The case was referred to a master to hear the parties and their evidence and report his findings to the court together with such facts and questions of law as either party might request. There was no report of the evidence. The master found that there was never a transfer of title in good faith from Mrs. Chesbrough to Noe, that no consideration was paid therefor and that the whole transaction was a sham, and that Mrs. Chesbrough, believing that she could not pay her debts, went through the form of transferring the property to Noe in order to put it out of the reach of her creditors, and that the pretended sale from Noe to Austin was a mere pretext without substance or reality. The master's report was confirmed.

The facts and circumstances as to the alleged delivery of the bill of sale to the defendant Noe were not as matter of law equally consistent with payment of a consideration by him as with the inference that no consideration was paid. Whether a consideration was in truth paid was a question of fact. The testimony of the defendants on that subject was open to suspicion by reason of its inherent improbability and might well have been found to be untrustworthy.

The burden of proof that there was no consideration for that alleged transfer was amply supported by the evidence. The motive of Mrs. Chesbrough for apparently divesting herself of title to the property and the explanation offered by the defendant Noe as to the amount of money paid, the source from which it was obtained, and the circumstances in which it previously had been kept, combined to taint the transaction with strong suspicion. The testimony introduced in behalf of the defendants

manifestly was discredited by the master. He was not obliged to believe it. *Commonwealth* v. *Russ*, 232 Mass. 58, 70.

The findings of fact made by the master must be accepted as final because the evidence is not reported. Those findings were not inconsistent with the conclusion in favor of the plaintiffs. The facts thus found did not require a conclusion in favor of the defendants. An apparent sale may be perfect in all the technical forms of an actual transfer under seal and still be a pure pretence. This being the view which the master took of the affair, there is no reason in law why his decision should not stand. It is of no consequence that the defendant Noe did not share in Mrs. Chesbrough's design to defraud her creditors, if the sale was a pretence without substance. The principle of *Cohen* v. *Levy*, 221 Mass. 336, is not relevant. The sale is set aside, not because it was in fraud of creditors but because there was in truth no sale in any true sense.

The numerous exceptions to the master's report on the ground that its conclusions are based on surmises, conjectures and suspicions were overruled rightly. Disregarding all parts of the report justly susceptible of such characterization, or open to criticism for other reasons, enough positive findings of fact are left to support the ultimate conclusions. The objections urged do not reach to the essential soundness of the findings. *Davis* v. *Boston Elevated Railway*, 235 Mass. 482, 498 to 502. It cannot be held that the findings as to the transactions with one Tromble respecting taxes and mortgage interest do not find support in the reported evidence and other relevant facts.

It is not necessary to examine the objections to the report or the requests for instructions one by one. The exceptions disclose no reversible error.

*Exceptions overruled.*