BOSTON SAFE DEPOSIT AND TRUST COMPANY, trustee, *vs.*
COMMISSIONER OF CORPORATIONS AND TAXATION.

EDWARD SHERMAN DODGE *vs.* SAME.

Suffolk. November 7, 8, 1929. — November 25, 1930.

Present: 'RUGG, C.J., CROSBY, PIERCE, CARROLL, & WAIT, JJ.

*Tax,* On income. *Statute,* Construction. *Corporation,* Dividend, Corporate action, Reorganization. *Evidence,* Presumptions and burden of proof. *Agency,* Existence of relation. *Contract,* Construction. *Practice, Civil,* Report, Findings by judge.

The provisions of St. 1922, c. 449, § 1, amending G. L. c. 62, § 5 (c), do not extend to income, even though received in a corporate reorganization, derived from sources other than those specified in said § 5 (c) and taxable under other clauses of the income tax law at different rates; and therefore do apply to the subject of taxation classified in G. L. c. 62, § 1 (b), in the amended form appearing in St. 1925, c. 343, § 7.

Commonly, the assertion of a corporation as to the nature of its corporate action, made in good faith and not obviously wrong nor designed as a cover for some ulterior design, is accepted as true; although the substance and intent of the action taken, as shown by the votes, are to be ascertained, courts do not usually undertake to review the character of the internal management of corporations as defined and declared by their votes. Per RUGG, C.J.

A corporation operating and manufacturing railroad cars procured the organization of a second corporation for the purpose of taking over its manufacturing department, transferred the assets of that department to the second corporation and received all of its capital stock in return therefor. Subsequently, in order definitely to separate its business as a common carrier from its manufacturing business, the first corporation brought about a "reorganization" by the incorporation of a third corporation and by the establishment of a committee with whom the stockholders of the first corporation might deposit their stock, one ultimate purpose being that such stockholders should have two and one half shares of the stock of the third corporation in place of each share held by them in the first corporation. The first corporation thereupon exchanged all the shares of the second corporation for shares in the third corporation and declared a dividend payable in shares of the third corporation, one half share on each share of the first corporation. The committee, with whom had been deposited shares in the first corporation, exchanged each of those shares for two shares in the third corporation. The committee received all

shares in the third corporation without discrimination between those received under the dividend declared and those received in the exchange made by them. The first corporation continued in business as an operator of cars. The capital of the first and second corporations remained unimpaired. *Held*, that

(1) The distribution of one half share of stock in the third corporation on each share of stock in the first corporation constituted a dividend to the stockholders of the first corporation: it was not an exchange of stock nor a mere inseparable part of a single reorganization of one or more corporations, where new shares received represented the same interest in the same assets as the old shares surrendered; and it was not within the scope of St. 1922, c. 449, § 1, amending G. L. c. 62, § 5 (c);

(2) That distribution was not a distribution of capital within the meaning of G. L. c. 62, § 1 (b), in the amended form appearing in St. 1925, c. 343, § 7, and (g): the dividend was paid out of the accumulated surplus and profits of the first corporation;

(3) The dividend was taxable under G. L. c. 62, § 1 (b), as so amended, and (g).

Upon consideration of all the terms of the agreement between the reorganization committee above mentioned and those shareholders of the first corporation who deposited their stock with the committee, viewed in the light of the conduct of the committee and of all the other surrounding circumstances, it was *held*, that

(1) The committee were constituted merely the agents of the depositing stockholders and had no title nor beneficial interest in the shares deposited or the stock dividend declared thereon;

(2) The tax on that dividend properly was to be assessed to the stockholders and not to the committee.

Where a judge of the Superior Court, who heard without a jury upon an agreed statement of facts a complaint for abatement of an income tax, found and ruled that the complainant was not entitled to an abatement, ordered the entry of judgment for the respondent and reported the complaint to this court, the general finding imported a finding of all the incidental facts essential to the conclusion reached of which the primary facts were reasonably susceptible; and such findings were not reviewable.

Two COMPLAINTS for abatement of income taxes, filed in the Superior Court on January 26, 1929, and January 28, 1929, respectively, the first complaint subsequently having been amended.

The complaints were heard together in the Superior Court without a jury by *Weed*, J., upon the pleadings and an agreed statement of facts. Material facts are stated in the opinion. The judge found and ruled that neither complainant was entitled to an abatement. He ordered the

entry of judgment for the respondent for his expenses and costs and reported the complaints for determination by this court.

*A. Lincoln,* (*J. Codman* with him,) for the complainant Dodge.

*C.M.Rogerson,* (*J.P. Carr* with him,) for the complainant Boston Safe Deposit and Trust Company, trustee.

*R. A. Cutter,* Assistant Attorney General, for the respondent.

RUGG, C.J. These are complaints for abatements of income taxes. G. L. c. 62, § 47, as amended by St. 1926, c. 287, § 3. An income tax was assessed by the defendant on the distribution to the complainants as stockholders in the Pullman Company, an Illinois corporation, of one half share of the stock of Pullman Incorporated, a Delaware corporation, as dividend upon each share of stock of the Pullman Company owned by them. The validity of this tax is challenged. The relevant facts are these: The complainants, prior to the events here pertinent, were owners of shares of stock in the Pullman Company. The original business of that corporation was operating sleeping and parlor cars and manufacturing freight and passenger cars and other railroad equipment. In 1924, the Pullman Car & Manufacturing Corporation was organized for the purpose of taking over the manufacturing department of the Pullman Company. The capital stock of that corporation was divided into 500,000 shares with a total par value of $50,000,000. The plant and assets in the manufacturing department of the Pullman Company were transferred to that corporation and the Pullman Company received and continued to own all the capital stock of that corporation. In 1927, the Pullman Company was the owner of this stock and was also conducting the business of operating sleeping and parlor cars. Its capital stock was divided into 1,350,000 shares with a par value of $135,000,000. The value of its net assets at all times here material was greatly in excess of the par value of its capital stock. The value of the net assets of the Pullman Car & Manufacturing Corporation was also, at all times here

material, in excess of the par value of its capital stock. In February, 1927, the Pullman Company decided to divide, definitely and clearly, its business as a common carrier operating sleeping and parlor cars from its business as a manufacturer, and to separate all its business into these two component parts, each under a distinct corporate entity. To accomplish that purpose a " reorganization " was voted. The plan adopted to that end was to appoint a reorganization committee with which those stockholders of the Pullman Company who desired to participate might deposit their stock. An important reason for a reorganization committee was to secure the advantages accruing from a union of interests and concert of action among the stockholders. One ultimate aim of the reorganization, as stated in the resolution of the directors of the Pullman Company, was that, when completed, each stockholder who participated should have two and one half shares of capital stock of no par value, of the new corporation, for each share of stock previously held in the Pullman Company, and also that the pro rata property interests of each stockholder who should not participate would be duly preserved. The plan was not to become operative unless the owners of at least two thirds of the capital stock of the Pullman Company should participate. In fact, 1,269,186 shares out of the total 1,350,000 shares were deposited and the plan was carried out. The complainants participated in the plan and deposited their stock with the reorganization committee. All steps were taken pursuant to proper votes of each of the corporations concerned and under the direction of the reorganization committee. A new corporation, Pullman Incorporated, was organized under the laws of Delaware with 3,375,000 shares of capital stock without par value. The assets of the Pullman Company, including its stock in the Pullman Car & Manufacturing Corporation, were appraised at $269,845,746.43, and the assets of the Pullman Car & Manufacturing Corporation at $72,759,726.81. These appraisals were known to the interested corporations. The latter corporation, on July 8, 1927, declared

and on July 11, 1927, paid to the Pullman Company as its
sole stockholder a cash dividend of $18,790,577.53. Thus
the value of its assets was reduced to $53,969,149.28, being
exactly one fifth of the appraised value of the assets of the
Pullman Company. On July 12, 1927, these events oc-
curred: The Pullman Company voted to and did exchange
its 500,000 shares of stock in the Pullman Car & Manu-
facturing Corporation for 675,000 shares of no par value
of Pullman Incorporated. The directors of the Pullman
Company declared a dividend, payable in the 675,000
shares of the capital stock of Pullman Incorporated thus
acquired, distributable to stockholders on August 15, 1927.
It was recited in the vote that this dividend was a step in
and a part of the reorganization of the Pullman Company.
This was a dividend of one half a share of the capital
stock of Pullman Incorporated on each share of capital
stock in the Pullman Company. The reorganization com-
mittee requested the delivery to them of this dividend
stock and the directors of the Pullman Company voted to
make delivery in accordance with that request. The
reorganization committee offered, in behalf of and as
agents for the depositing stockholders of the Pullman
Company, to exchange all such stock deposited with them
for shares in Pullman Incorporated without par value, on
the basis of two shares of stock of Pullman Incorporated
for each share of stock in the Pullman Company upon
certain conditions. That offer was accepted. Deliveries
of stock in conformity with the foregoing offers, votes,
declarations and request were made on August 15, 1927.
The reorganization committee received two shares of Pull-
man Incorporated by way of exchange for each deposited
share of Pullman Company, and one half share of Pull-
man Incorporated by way of dividend on each deposited
share of Pullman Company. Certificates of stock of Pull-
man Incorporated due to the complainants as depositors
with the reorganization committee were delivered to the
complainants on August 26, 1927, but without discrimina-
tion between such certificates declared as dividends and
those delivered in exchange for transfer of shares of stock

in the Pullman Company. Shareholders of record in the Pullman Company on July 30, 1927, resident in this Commonwealth, to the number of two hundred sixty, holding four thousand, nine hundred ninety-two shares, did not deposit their shares with the reorganization committee and received directly the dividend paid by the Pullman Company in stock of Pullman Incorporated. The Pullman Company, on August 15, 1927, was and at all times since has continued to be in existence as a corporation actively engaged in the business of operating sleeping and parlor cars. It has continued to pay cash dividends upon its shares including those held by Pullman Incorporated and those owned by shareholders who did not deposit their shares under the reorganization plan. The result of the reorganization was that the new corporation, Pullman · Incorporated, owned the great majority of the capital stock of the Pullman Company and all the capital stock of the Pullman Car & Manufacturing Corporation.

The defendant assessed a tax at the rate of six per cent on the aggregate value, as determined by him, of the one half shares of stock of Pullman Incorporated declared as dividend, and on August 15, 1927, distributed to the reorganization committee on its order by the Pullman Company on the shares of stock of the Pullman Company deposited by the complainants with the reorganization committee. This tax was levied on the theory that that one half share was a dividend received as income and taxable as such. There is no dispute as to the valuation made by the defendant. The contention of the complainants is that the stock thus received was not income, was not received by them as income, and was not subject to any tax as income.

The relevant statutes are these: G. L. c. 62, § 1 (b) (as finally amended by St. 1925, c. 343, § 7) and (g). "Income of the classes described in subsections (a), (b), (c) and (e) received by any inhabitant of the commonwealth during the preceding calendar year, shall be taxed at the rate of six per cent per annum . . . . (b) Dividends, other than stock dividends paid in new stock of the company issuing the same, on shares in all corporations . . . organized under

the laws of any state . . . other than this commonwealth . . . [with exceptions not here relevant] . . . . (g) No distribution of capital, whether in liquidation or otherwise, shall be taxable as income under this section; but accumulated profits shall not be regarded as capital under this provision." G. L. c. 62, § 5 (c) [as finally amended by St. 1922, c. 449, § 1], so far as pertinent is in these words: " Income of the following classes received by any inhabitant of the commonwealth during the preceding calendar year shall be taxed as follows . . . . (c) The excess of the gains over the losses received by the taxpayer from purchases or sales of intangible personal property, whether or not said taxpayer is engaged in the business of dealing in such property, shall be taxed at the rate of three per cent per annum . . . . If, in any exchange of shares upon the reorganization of one or more corporations . . . the new shares received in exchange for the shares surrendered represent the same interest in the same assets, no gain or loss shall be deemed to accrue from the transaction until a sale or further exchange of such new shares is made."

A main contention of the complainants is that the tax here assailed was levied on something which is not a dividend but only an apparent gain resulting from an exchange of shares in the reorganization of one or more corporations where the new shares received represent the same interest in the same assets as the old shares represented, and hence, according to the express mandate of said § 5 (c), not now liable to taxation. Manifestly the tax was levied as upon a dividend. It was levied because of an assumption that the one half share of capital stock was in fact a dividend taxable at the rate of six per cent under said § 1 (b). It was not levied as upon an excess of gains over losses from purchases or sales of intangibles taxable at three per cent under said § 5 (c). These two classifications of subjects of taxation are separate and distinct, one from the other; they have been constantly maintained under the income tax law, and they are warranted by art. 44 of the Amendments to the Constitution. The two sources of income thus specified do not belong to the same class. Incomes

derived from each of these two sources may rightly be taxed at different rates. *Tax Commissioner* v. *Putnam,* 227 Mass. 522, 531. *Knights* v. *Treasurer & Receiver General,* 237 Mass. 493, 495. *Opinion of the Justices,* 266 Mass. 583. There is every presumption that the Legislature, in providing expressly that shares of stock received in corporate reorganization under the stated conditions should not be regarded in taxing gains under said § 5 (c), did not intend impliedly to extend such exemption from taxation to income, even though received in a corporate reorganization, derived from different sources and taxable under other clauses of the income tax law at different rates, and thus wholly by inference to limit the scope of other broad and inclusive provisions of the income tax law. There is nothing in the history of St. 1922, c. 449, § 1, whereby was added to said § 5 (c) the exemption clause as to shares received in exchange on corporate reorganization, to indicate that such exemption was designed to extend to classes of income, other than gains from purchases or sales of intangibles, made taxable by different clauses of the income tax law. If, as argued at the bar, St. 1922, c. 449, § 1, was enacted to change the statute law as interpreted in *Osgood* v. *Tax Commissioner,* 235 Mass. 88, and *Stone* v. *Tax Commissioner,* 235 Mass. 93, it will be given full force by confining the exception to the income tax on gains from purchases or sales of intangibles. It has been held that the intent of the General Court, in subjecting to the tax incomes derived from dividends in shares of stock and the other sources enumerated in said § 1 (b), was to collect revenue from all dividends within legislative jurisdiction. *Boston Safe Deposit & Trust Co.* v. *Commissioner of Corporations & Taxation,* 262 Mass. 1, 4. *Follett* v. *Commissioner of Corporations & Taxation,* 267 Mass. 115 and cases cited. Exceptions cannot readily be read into a statute enacted with that design. Exemption from taxation is an extraordinary grace of the sovereign power, is to be strictly construed, must be made to appear plainly, and is not to be lightly inferred. *Milford* v. *County Commissioners,* 213 Mass. 162, 165. *Trull* v. *Lowell,* 245 Mass. 45, 46. *Carlos*

*Ruggles Lumber Co.* v. *Commonwealth,* 261 Mass. 445, 449, and cases cited.

There was no exchange of shares when the dividend was declared on which the tax here in question was levied. No shares were transferred by the complainants or by the reorganization committee in return for those shares of Pullman Incorporated turned over by the Pullman Company in way of dividend. The vote of the directors of the Pullman Company respecting the shares of stock here taxed was that " a dividend payable in the six hundred seventy-five thousand (675,000) shares of the capital stock of Pullman Incorporated be and the same is hereby declared distributable on the fifteenth day of August, 1927." Thus the Pullman Company described and named the transaction a " dividend." Commonly, the assertion of a corporation as to the nature of its corporate action, made in good faith and not obviously wrong or designed as a cover for some ulterior design, is accepted as true. Although the substance and intent of the action taken, as shown by the votes, are to be ascertained, courts do not usually undertake to review the character of the internal management of corporations as defined and declared by their votes. *Coolidge* v. *Grant,* 251 Mass. 352, 354. *Gray* v. *Hemenway,* 268 Mass. 515, 519–522 and cases there reviewed.

The reorganization committee treated this as in truth a dividend. By letter of July 12, 1927, that committee requested the directors of the Pullman Company to issue and deliver to them all shares of Pullman Incorporated applicable to the stock of the Pullman Company deposited with them, to be distributed on August 15, 1927, " pursuant to the dividend declaration this day made by your Board." An agreed fact is that on August 15, 1927, the reorganization committee received from the Pullman Company the " dividend on the deposited stock of one half share of Pullman Incorporated for each share of the Pullman Company deposited, declared on July 12, 1927, and payable August 15, 1927." The complainants and the reorganization committee recognized dividends to be declared as matters detached and independent of others.

It was provided by paragraph Seventh of the stock deposit agreement that dividends on deposited stock of the Pullman Company, other than regular quarterly dividends, should be retained by the reorganization committee and distributed at the termination of the agreement. It was provided by paragraph Fourteenth that upon the consummation of the plan each owner of a certificate of deposit should receive all shares of stock due either in exchange for shares of stock deposited or by way of a stock dividend payable in shares of stock in any new company.

It is provided by G. L. c. 62, § 5 (e) that " Interest and dividends taxable under section one shall not be taxed under this section." The implication of this clause is that no provision of said § 5 applies to taxation under said § 1. It is plain that the stockholders in the Pullman Company who did not participate in the plan of reorganization received a dividend in stock of Pullman Incorporated taxable in accordance with the terms of said § 1. It would savor strongly of inequality to tax one set of stockholders on such dividends and to hold others exempt from the same taxation. Nothing need be said concerning *Van Heusen* v. *Commissioner of Corporations & Taxation*, 257 Mass. 488, upon which the complainants rely, except that it has no authoritative effect on the case at bar.

In our opinion the result follows from all these factors in combination that the one half share of capital stock of Pullman Incorporated declared and distributed by way of dividend on each share of capital stock of the Pullman Company was not a mere inseparable part of a single reorganization of one or more corporations where new shares received represent the same interest in the same assets as the old shares surrendered. It was a separable and independent matter. It was in essence and in truth a dividend. It conforms to the definition and purpose of a dividend described in *United States* v. *Phellis*, 257 U. S. 156, at 171, in these words: " It is the appropriate function of a dividend to convert a part of a surplus thus accumulated from property of the company into property of

the individual stockholders; the stockholder's share being thereby released to and drawn by him as profits or income derived from the company. That the distribution reduces the intrinsic capital value of the shares by an equal amount is a normal and necessary effect of all dividend distributions — whether large or small and whether paid in money or in other divisible assets — but such reduction constitutes the dividend none the less income derived by the stockholder if it represents gains previously acquired by the corporation." *Wilder* v. *Tax Commissioner,* 234 Mass. 470, 474. It was not transmuted into an exchange of shares representing the same interest in the same assets simply by being grouped together with other matters and called a reorganization. It was not exempt from taxation under G. L. c. 62, § 5 (c) as amended.

Further contentions of the complainants are that the dividend was not received by them as stockholders of the Pullman Company but by the reorganization committee; that by the deposit of their shares of stock with the reorganization committee their individual rights as stockholders of the Pullman Company were extinguished or at least suspended or incapable of enforcement; and that they received, in return for the deposited stock, a simple contractual obligation on the part of the reorganization committee to account to them for what might be due to them finally as fruitage of the consummation of the reorganization plan. Whether these contentions are sound depends upon the correct construction of the agreement between the complainants and the reorganization committee interpreted in the light of the end to be accomplished and all the other circumstances. *Eustace* v. *Dickey,* 240 Mass. 55, 72, 73. *Moss* v. *Old Colony Trust Co.* 246 Mass. 139, 155. By paragraph First of the agreement, the depositors constitute and appoint three named persons as a committee. By paragraph Sixth, it is provided that the deposit of the stock authorizes the committee to direct the Pullman Company to pay to the committee all dividends declared or paid by that company on the deposited stock while on deposit with the com-

mittee, and that such deposit shall also constitute an order on the Pullman Company to comply with the directions of the committee. By paragraph Seventh, provision is made for immediate payment to holders of certificates for deposited stock of all regular quarterly dividends on the stock and for retention by the committee of all other dividends until the termination of the agreement, when such dividends also shall be distributed. By paragraph Eleventh, it is provided that the " Committee shall act in respect of the deposited stock solely as the agents and attorneys in fact of the Depositing Stockholders, and the deposit of the certificates of said stock shall not be deemed to transfer, assign or vest to or in the Committee any title or beneficial interest to or in the said certificates of stock represented thereby." It would be difficult to choose words more definitely expressing agency as the relation created on the part of the reorganization committee toward the complainants as depositors of stock in the Pullman Company. There is no language elsewhere in the deposit agreement which negatives or narrows the unmistakable import of these provisions. The irrevocable powers conferred upon the reorganization committee, the discretionary and managerial functions reposed in them, and all other authorities and faculties bestowed on them do not impair or affect these specific terms of the deposit agreement.

The conduct of the reorganization committee shows that they interpreted their relation to the depositors as that of agents. The reorganization committee sent a communication to the directors of the Pullman Company requesting " on behalf of the " depositing stockholders that notice of a special meeting of the stockholders of the corporation be sent to the committee rather than directly to the stockholders. The reorganization committee also notified the same directors that, having previously filed authorization from all depositing stockholders to execute dividend orders covering dividends on all deposited stock, they expected to consummate the reorganization on August 15, 1927, and that " accordingly our orders upon you will be as

agents for and on behalf of the depositing stockholders for the purpose of making delivery of stock of Pullman Incorporated to the holders of our Certificates of Deposit." The reorganization committee sent a letter to the directors of Pullman Incorporated stating that they were acting as a committee representing stockholders of the Pullman Company who had deposited stock under the deposit agreement and offering " On behalf of and as agents for the depositing stockholders " to exchange such deposited stock for shares of Pullman Incorporated on stated terms. These communications were acted upon by the corporations concerned. The complainants accepted the stock received in consequence of these communications upon the termination of the deposit agreement. The interpretation thus placed upon the meaning of the deposit agreement by the action of the interested parties is of significance. *Pittsfield & North Adams Railroad* v. *Boston & Albany Railroad,* 260 Mass. 390, 398.

It is not necessary to review the numerous cases discussing the legal principles which in other circumstances may govern the nature of the powers and duties of reorganization committees and their relation to the depositing stockholders and others participating in the reorganization. The relation is doubtless fiduciary, in any event. The words of the deposit agreement in the case at bar are too clear as to the facts here disclosed and the point to be decided to render profitable any examination of authorities interpreting agreements of a different tenor in their bearing upon diverse facts.

There was no assignment of the dividends here taxed to the reorganization committee in any such sense as deprived the complainants of their property therein. The commingling of the shares of stock by the reorganization committee did not wipe out the definite rights of the complainants in their shares. The principle of *Chase* v. *Boston,* 180 Mass. 458, has no relevancy to the issues here raised. The relation of the reorganization committee and the complainants bore no resemblance to that of broker and customer. The beneficial interest in shares

held by the reorganization committee remained at all times in the depositing stockholders.

The dividend here taxed was not a distribution of capital within the meaning of G. L. c. 62, § 1 (b) as amended, and (g). The facts set out in this record show that, after the payment of this dividend, the capital of the Pullman Company and that of the Pullman Car & Manufacturing Corporation were unimpaired. The dividend plainly was paid out of the accumulated surplus and profits of the Pullman Company. This point is amply covered by recent decisions. *Lapham* v. *Tax Commissioner,* 244 Mass. 40. *Tilton* v. *Tax Commissioner,* 238 Mass. 596. *Boston Safe Deposit & Trust Co.* v. *Commissioner of Corporations & Taxation,* 262 Mass. 1. *Follett* v. *Commissioner of Corporations & Taxation,* 267 Mass. 115.

The shares of stock were received by the reorganization committee as agents for the complainants on August 15, 1927. They were received as dividends upon stock of the Pullman Company, which was not the corporation issuing the stock. They were therefore a dividend other than a stock dividend paid in new stock of the company issuing the same. It was taxable under G. L. c. 62, § 1 (b) as amended.

The finding of the trial judge was a general one in each case in favor of the respondent upon the agreed facts and such inferences as might be drawn therefrom. Such general finding imports a finding of all the incidental facts essential to the conclusion reached of which the primary facts are reasonably susceptible. Such findings are not reviewable. Only the questions of law reported or saved can be examined. *Vinal* v. *Nahant,* 232 Mass. 412, 419. *Moss* v. *Old Colony Trust Co.* 246 Mass. 139, 143.

It is apparent from this discussion that there was no error of law in sustaining the validity of the tax. It is not necessary to review in detail the requests granted or denied, nor to examine further the arguments presented. Every question argued has been considered. In each case the entry may be

*Order for judgment for respondent*
*for expenses and costs affirmed.*