JOSEPH C. GALDI & others *vs.* CARIBBEAN SUGAR COMPANY & another.

Suffolk.    December 8, 1950. — May 14, 1951.

Present: QUA, C.J., WILKINS, WILLIAMS, & COUNIHAN, JJ.

*Corporation,* Dividend, Corporate entity. *Fraudulent Conveyance. Words,* "Dividend."

Allegations of a certain bill in equity, in substance that a bank "completely dominated and controlled" a corporation which "wholly owned" a second corporation, that the bank caused the first corporation to purchase from the second corporation stock in the second corporation and to pay the second corporation a large sum of money therefor, and that the second corporation thereupon purchased from the bank preferred stock in the first corporation owned by the bank

"at grossly inflated prices far above its true market value," did not show the payment of a dividend, even in disguised form, by the first corporation to the bank or breach of an indenture between the first corporation and a trustee for its bondholders forbidding the payment of "dividends on any class of stock" until certain interest on the bonds had been paid; nor did such allegations show such an identity between the corporations that the purchase of the preferred stock by the second corporation was the act of the first corporation, or that a scheme was perpetrated, through use of the second corporation as an instrumentality, of transferring assets of the first corporation to the bank in fraud of the bondholders as creditors of the first corporation.

BILL IN EQUITY, filed in the Superior Court on February 16, 1950.

A demurrer to the bill was heard by *Kirk*, J.

*W. Noyes*, (*S. B. Anderson* with him,) for the plaintiffs.

*H. D. McLellan*, (*H. V. Atherton* with him,) for the defendant The National Shawmut Bank of Boston.

WILLIAMS, J. This is a bill in equity in which it is sought to have the defendant National Shawmut Bank account for certain funds alleged to be held by it as constructive trustee for the plaintiffs. There was an interlocutory decree sustaining generally a demurrer filed by the bank and a final decree dismissing the bill as against the bank. From this final decree the plaintiffs have appealed. The facts alleged in the bill are as follows.

On August 2, 1926, the defendant Caribbean Sugar Company, hereinafter called Caribbean, a corporation organized under the laws of the Republic of Cuba, issued a series of first mortgage seven per cent sinking fund gold bonds due August 1, 1941, to an amount not in excess of $3,500,000. The bonds were secured by a mortgage of Caribbean's real estate and personal property in Cuba to a trustee, originally the National Shawmut Bank of Boston. The bonds were made payable at the holder's option either in Boston or in San Francisco. On February 1, 1929, Caribbean ceased to pay interest on its bonds. On February 10, 1932, a supplemental indenture was entered into by Caribbean and the trustee for the bondholders which provided that from February 1, 1929, until August 1, 1941, the date of maturity,

interest should be payable only out of "available net income," and that, if the bonds were not paid at maturity, interest should be paid thereafter at the rate of seven per cent per annum until the principal was paid. This obligation was stated to be "absolute and not conditional upon the existence of any available net income." The First National Bank of Boston had replaced National Shawmut Bank as trustee before the execution of the supplemental indenture. Small payments were made to the bondholders at annual intervals between 1942 and 1949, Caribbean apportioning these payments between principal and interest. Subsequently to February 10, 1932, and before August 1, 1941, the Republic of Cuba "promulgated certain so called . moratorium laws under which it purported to limit the obligations of Caribbean to its bondholders prior to June 30, 1970, to the making of annual payments of principal beginning June 30, 1942, and of interest at the rate of one per cent per annum from June 4, 1940. The amount of principal payments is determined by the price of raw centrifugal sugar, according to a formula established by the moratorium laws. . . . Caribbean has accepted the provisions of these laws and since their adoption has refused to make any payments on its bonds other than those heretofore described." The plaintiffs individually are owners of one hundred eighteen of the bonds. A provision of the supplemental indenture, art. 2, § 7, reads: "No dividends on any class of stock of the company at the time outstanding shall be paid in any year, or set apart for payment in any year, unless and until all unpaid interest on the. bonds then outstanding . . . shall have been paid in full to the interest payment date next preceding the declaration of such dividend."

National Shawmut Bank, hereinafter called Shawmut, owned seventy-nine per cent of the common stock of Caribbean and a "large part" of its preferred stock. A majority of the directors of Caribbean were directors, officers, and employees of Shawmut, and the president of Caribbean was senior vice-president of Shawmut. Shawmut "completely

dominated and controlled the affairs of Caribbean." "Shawmut, by virtue of its control of and dominance over the affairs of Caribbean, caused Caribbean at various times since August 1, 1941, to pay $2,904,600 to Manopla Investment & Trading Company (hereinafter called Manopla), a Cuban corporation wholly owned by Caribbean, in purchase of stock of the latter corporation." (From the briefs of the parties it appears that the term "latter corporation" refers to Manopla rather than Caribbean.) "Manopla used over $1,000,000 of this money to purchase Caribbean's bonds at a flat price of substantially less than fifty per cent of their face value exclusive of interest. At the same time it made small purchases of preferred stock of Caribbean from others than Shawmut, thereby forcing up the price of the preferred stock. After the price was forced up, it made additional purchases of preferred stock in Caribbean, buying in all 12,438.1867 shares of said preferred stock having a par value of $100 per share for a total of $1,675,587.52. Plaintiffs do not know how much of this money was paid to Shawmut, but they say that a very large part thereof was paid Shawmut in exchange for its preferred stock in Caribbean at grossly inflated prices far above its true market value, thereby 'bailing out' Shawmut and in effect paying it substantial dividends on the stock thus purchased. The result produced by this fraudulent manipulation of Caribbean's assets was to cause Shawmut's preferred stock in Caribbean to be purchased with Caribbean's money at prices as high as sixty per cent above its par value while Caribbean bonds were being quoted and sold at less than fifty per cent of their face value exclusive of interest in arrears."

The plaintiffs pray that Shawmut "be required to account for all sums received by it from such sales and to hold said sums (at least to the extent that such sums constitute disguised dividends) as trustee for the plaintiffs subject to the order of the court."

The first ground of demurrer is that "The plaintiffs have not stated such a case as entitles them to any relief in equity

against this defendant." It may be assumed without so deciding that the plaintiffs have a present enforceable claim against Caribbean to recover the principal of and the accrued interest on their bonds, and are therefore creditors of Caribbean. "The essence of their case," as stated in their brief, is that "Shawmut, with knowledge of and with intent to evade" the clause of the supplemental indenture relating to the payment of dividends, above quoted, "having control of the affairs" of Caribbean, caused Caribbean to break this term of its contract. "Furthermore," it is contended, "Shawmut not only, through its control, caused Caribbean to break its contract, but did so for its own pecuniary benefit and with intent to hinder, delay or defraud plaintiffs, who are creditors of Caribbean." The alleged dividend was the transfer by Caribbean "through the medium of its wholly owned subsidiary," Manopla, of a "large part of its profits to Shawmut in the form of an inflated price in excess of par which Manopla paid for Shawmut's preferred stock."

There is nothing in the bill to intimate that the term "dividends" in the supplemental indenture meant other than a distribution of a share of the net earnings of the corporation to its stockholders. This is the commonly accepted meaning of the term when no special circumstances appear. *Kennedy Bros. Inc.* v. *Bird*, 287 Mass. 477, 484. *Williston* v. *Michigan Southern & Northern Indiana Railroad,* 13 Allen, 400, 404. *Wilder* v. *Tax Commissioner*, 234 Mass. 470, 474. Fletcher, Cyc. Corporations, § 5318. Such a distribution requires a declaration and vote by the authorized representatives of the corporation, *Willson* v. *Laconia Car Co.* 275 Mass. 435, 441, and leaves the fractional interest represented by each share of stock, whether preferred or common, "just what it was before." *Boston Safe Deposit & Trust Co.* v. *Adams*, 219 Mass. 175, 177. *Gray* v. *Hemenway*, 212 Mass. 239, 241. The allegation that Manopla paid money to purchase the preferred stock of Caribbean from Shawmut at excessive prices does not show the payment of a dividend by Caribbean, even in disguised form, and the consequent breach of the terms of the supplemental indenture.

We proceed to inquire whether the allegations of the bill are sufficient to demonstrate that the purchase was an act of Caribbean inspired by Shawmut with the intent on the part of both to hinder, delay, and defraud the creditors of Caribbean. Undoubtedly, equity, particularly in cases of alleged fraud, will disregard the form to ascertain the substance of a transaction. *Cushman* v. *Noe*, 242 Mass. 496, 502.

The alleged act or acts of Caribbean are that at various times it paid $2,904,600 to Manopla in purchase of the latter's stock. Whether this stock was unissued stock or was stock held in Manopla's treasury does not appear. It is not alleged that Caribbean did not receive full value for this investment of its funds and the transaction shows no fraud on Caribbean's creditors. It is stated in the bill that Manopla used a part of the money so received from Caribbean to purchase the preferred stock of Caribbean held by Shawmut "at grossly inflated prices far above its true market value"; that this act of Manopla resulted in a fraud on the plaintiffs; and that "The result produced by this fraudulent manipulation of Caribbean's assets was to cause Shawmut's preferred stock in Caribbean to be purchased with Caribbean's money." It appears that the purchase in fact was made by Manopla with its own money. In no sense was it a purchase by Caribbean unless the act of Manopla can be considered the act of Caribbean. The stock of Manopla was wholly owned by Caribbean. But as was said in *Marsch* v. *Southern New England Railroad*, 230 Mass. 483, 497–498, "The identity of stockholders and the control of the contracting corporation does not operate to merge the corporations into one or to make either the agent of the other. . . . Corporations . . . are distinct entities and neither can be treated as the 'alter ego' or agent of the other when openly contracting for itself and in its own corporate name."

"Ownership of all the stock in several corporations by one person does not create a single unit or justify a disregard of separate corporations. . . . Different corporations usually are distinct entities in law. It is only where the

corporation is a sham, or is used to perpetrate deception to defeat a public policy, that it can be disregarded." *New England Theatres, Inc. v. Olympia Theatres, Inc.* 287 Mass. 485, 493. See *Browne v. Brockton National Bank,* 305 Mass. 521, 530; *Pullman's Palace Car Co. v. Missouri Pacific Railway,* 115 U. S. 587, 597; *Peterson v. Chicago, Rock Island & Pacific Railway,* 205 U. S. 364, 391; *Chicago, Milwaukee & St. Paul Railway v. Minneapolis Civic & Commerce Association,* 247 U. S. 490, 500–501; *Kingston Dry Dock Co. v. Lake Champlain Transportation Co.* 31 Fed. (2d) 265, 267; *Pacific Can Co. v. Hewes,* 95 Fed. (2d) 42, 46; *Inland Development Co. v. Commissioner of Internal Revenue,* 120 Fed. (2d) 986, 988–989; *Northwestern Pacific Railroad v. State Board of Equalization of California,* 21 Cal. (2d) 524, 531; *Fairbanks Morse & Co. v. District Court of Palo Alto County,* 215 Iowa, 703, 711; *North v. Higbee Co.* 131 Ohio St. 507; Fletcher, Cyc. Corporations, § 43. "The ownership of all the stock and the absolute control of the affairs of a corporation do not make that corporation and the individual owner identical, in the absence of a fraudulent purpose in the organization of the corporation." *M. McDonough Corp. v. Connolly,* 313 Mass. 62, 66.

The bill does not state the nature of Manopla's business, and there is no allegation that it was organized and established by Caribbean as a "sham" or for a fraudulent purpose. No mention is made in the bill as to the composition of Manopla's board of directors. It is not to be assumed that in purchasing the bonds and preferred stock of Caribbean they acted other than in accordance with their honest judgment. We find nothing to indicate that they acted in pursuance of a fraudulent scheme entered into by Caribbean and Shawmut to transfer the assets of Caribbean into the possession of Shawmut. It is not demonstrated that in the matter complained of Manopla was used as an instrumentality by Caribbean.

We need not consider other grounds of the demurrer. It must be sustained because the bill does not state facts sufficient to show a fraudulent transfer of assets by Carib-

bean to Shawmut. The plaintiffs have not shown that they are entitled to relief.

The interlocutory decree sustaining the demurrer is affirmed, and the final decree dismissing the bill is affirmed with costs.

*So ordered.*